UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRAVELERS PERSONAL INSURANCE COMPANY<br><br>Plaintiff,<br><br>vs.<br><br>ESTATE OF SCOTT PARZYCH<br><br>Defendant<br><br>and<br><br>JACQUELINE PARZYCH<br><br>Defendant | CIVIL TRIAL DIVISION<br><br>No. 08-cv-3138 |

## O R D E R

**AND NOW** this          day of                    2009 upon consideration of the Motion for Summary Judgment of Plaintiff, Travelers Personal Insurance Company, and any responses filed thereto, it is hereby **ORDERED and DECREED** that said Motion is **GRANTED** and declaratory judgment is entered in favor of Plaintiff, declaring that Plaintiff is not obligated to provide insurance coverage to the Estate of Scott Parzych under the insurance policy held by Jacqueline Parzych.

BY THE COURT

_____ J.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRAVELERS PERSONAL INSURANCE COMPANY<br><br>Plaintiff,<br><br>vs.<br>ESTATE OF SCOTT PARZYCH<br><br>Defendant<br><br>and<br><br>JACQUELINE PARZYCH<br><br>Defendant | CIVIL TRIAL DIVISION<br><br>No. 08-cv-3138 |

## MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF, TRAVELERS PERSONAL INSURANCE COMPANY

Plaintiff, Travelers Personal Insurance Company ("Travelers"), by and through its attorneys, Kent & McBride, P.C., hereby moves for summary judgment and in support thereof avers the following:

**STATEMENT OF FACTS:**

1. Jacqueline Parzych, mother of the deceased, Scott Parzych, has been an insured of Travelers pursuant to a policy of automobile insurance since approximately 2003. (See Jacqueline Parzych's insurance policy attached hereto and marked as Exhibit "A".)

2. Pursuant to the UIM policy held by Jacqueline Parzych, an "insured"

constitutes the named insured as well as any resident family member. Jacqueline's policy further provides in pertinent part that the term "resident family member" includes any person related to the named insured by blood, marriage or adoption <u>who is a resident of the named insured's household</u>.

3. Scott was listed on his mother's insurance policy as a "Listed Driver."

4. In August 2007, Scott married Julie Cajina and lived with her in an apartment at 30 West Vine Street, Hatfield, Pennsylvania, along with her son, Tyler. (See Examination Under Oath of Julie Parzych, pages 5-7, attached hereto and marked as Exhibit "B".)

5. Both Julie and Scott were co-signors for the apartment lease. (See Examination Under Oath of Julie Parzych, pages 5-7, attached hereto and marked as Exhibit "B".)

6. Scott received both mail and bills at the apartment at 30 West Vine Street, including Discover Card bills, GM Card bills, other credit card bills, bank statements and cell phone bills. (See Examination Under Oath of Julie Parzych, page 10-11, attached hereto and marked as Exhibit "C".)

7. Julie and Scott had a joint bank account listing both of them as residing at 30 West Vine Street. (See Examination Under Oath of Julie Parzych, page 13, attached hereto and marked as Exhibit "D".)

8. Scott's wife, Julie Parzych, was also an insured with Travelers. (See Julie Parzych's insurance policy attached hereto and marked as Exhibit "E".) Scott was a named insured on that policy.

9. On November 15, 2007, Scott Parzych was tragically killed when a vehicle

in which he was a passenger was involved in a fatal motor vehicle accident.

10. As Scott and Julie Parzych resided together at 30 West Vine Street, Hatfield, Pennsylvania 19440, Travelers paid Julie Parzych, the Administratrix of Scott Parzych's Estate (hereinafter referred to as the "Estate"), the policy limits for her underinsured motorist ("UIM") benefits.

11. However, in addition to paying the Estate the policy limits for the UIM benefits under Julie Parzych's policy, the Estate also made a claim for UIM benefits under the policy held by Scott's mother, Jacqueline Parzych.

12. The Estate made this second claim for UIM benefits claiming that Scott was also a resident of his mother, Jacqueline Parzych's home at the time of his death.

13. At the time of Scott's accident, Jacqueline Parzych resided at 521 East Montgomery Avenue, North Wales, Pennsylvania 19454.

14. Jacqueline Parzych testified that she often babysat Tyler while Scott and Julie went out, and that the two would stay at her home after their night out. (See Examination Under Oath of Jacqueline Parzych, pages 14-15 attached hereto as Exhibit "F").

15. Jacqueline Parzych also testified that Scott occasionally stayed over at her house during snowstorms because his mother's home was closer to his job than the apartment. (See Examination Under Oath of Jacqueline Parzych, pages 14-15 attached hereto as Exhibit "F").

16. Scott and Julie were also in a pool league which was held closer to Jacqueline's home, and as a result, Scott and Julie would stay over at Jacqueline's house after the pool league was over for the night. (See Examination Under Oath of Jacqueline

Parzych, page 16 attached hereto as Exhibit "G").

17. Jacqueline Parzych testified that Scott stayed at her home approximately one time per week. (See Examination Under Oath of Jacqueline Parzych, page 13 attached hereto as Exhibit "H").

18. Although Jacqueline Parzych's insurance policy with Travelers listed Scott as a resident driver, she had originally obtained this policy with Travelers years before Scott even met Julie. (See Examination Under Oath of Jacqueline Parzych, pages 25-28 attached hereto as Exhibit "I").

19. Though she updated the policy throughout the years to include/exclude certain vehicles, she testified that she never updated the policy with regard to the listed drivers on the policy. (See Examination Under Oath of Jacqueline Parzych, pages 25-28 attached hereto as Exhibit "I").

20. Steve Canuso, the independent insurance agent who wrote Jacqueline Parzych's insurance policy with Travelers, testified that Scott was still listed on his mother's policy of insurance at the time of his death as a result of an administrative oversight. (See deposition transcript of Steven Canuso, pages 20-21, attached hereto as Exhibit "J").

21. Mr. Canuso testified that he believed Scott was living in Hatfield with Julie at the time of his accident, and that he probably should have been taken off of Jacqueline's policy. (See deposition transcript of Steven Canuso, pages 26-28, attached hereto as Exhibit "K").

22. Accordingly, despite visits to his mother's home, Scott Parzych resided only with his wife, Julie, at 30 West Vine Street, Hatfield, Pennsylvania 19440, at the time of his accident.

23. As such, coverage under Jacqueline Parzych's policy was found not to extend to Scott Parzych at the time of his accident as Scott was not a resident of Jacqueline Parzych's household.

24. Subsequently, Travelers filed this case under the Declaratory Judgment Act in order to obtain a judicial declaration that Travelers is not obligated to provide UIM benefits to the Estate under the automobile insurance policy held by Jacqueline Parzych.

25. The Federal Rules of Civil Procedure shall be construed and administered to secure the "just, speedy, and inexpensive determination of every action." F.R.C.P. Rule 1.

26. Pursuant to F.R.C.P. Rule 56(c), summary judgment is appropriate if the record establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

27. Under Pennsylvania law, the interpretation of an insurance contract is a question of law for the courts to decide. Allstate Ins. Co. v. Drumheller, 285 F. Supp. 1 2d 605 (E.D. Pa. 2003).

28. Whether a particular loss is within the coverage of an insurance policy is a question of law and may be decided on a motion for summary judgment. Id.

29. Under Pennsylvania law, an individual is considered to be a resident of the insured's household if the individual dwells together with the insured as an integrated family unit under the same roof as the insured, and the individual resides with the insured on a regular basis. Amica Mutual Ins. Co. v. Donegal Mutual Ins. Co., 545 A.2d 343 (Pa. Super. Ct. 1988).

30. It has also been held that one's intention is not a relevant consideration when

determining residency. Id.

31. In <u>Amica Mutual Ins. Co.</u>, the Court held that insured's daughter was not a resident of the insured's house despite evidence indicating that she stayed there three to five nights per month, received mail there, and kept personal belongings there including pets and multiple closets full of clothing. Id.

32. In <u>St. Paul Fire and Marine Ins. Co. v. Barbara Lewis, et al.</u>, the Court examined a situation, like the one at hand, where an insurance policy afforded coverage to the family members "living with" the named insured. <u>St. Paul Fire and Marine Ins. Co. v. Lewis</u>, 935 F.2d 1428 (3d Cir. 1991).

33. It was held by the Court in <u>Lewis</u> that the phrase "living with" required at least some regular, personal contact with the insured's home, and that occasional, sporadic, and temporary contacts were insufficient. Id.; See also <u>AllState Property & Casualty Ins. Co. v. Jaffe</u>, WL 3911048 (E.D. Pa. 2008) (the term "resident" requires more than occasional, sporadic, and temporary contacts).

34. Furthermore, the <u>Lewis</u> Court opined that having belongings in the insured's household was insufficient to establish residency. <u>Lewis</u>, 935 F.2d 1428

35. In <u>Lewis</u>, although the insured's son frequented the insured's home to visit, eat meals, and celebrate holidays, the insureds maintained a separate room for their son at their home where he kept personal belongings, the son's address on his license was that of the insureds, and the son received his mail at the insureds' home, the Court held that there was no evidence indicating that the son's visits occurred with any frequency or regularity to constitute that of a resident of the insured's household. Id.

36. It should also be noted that the fact that the son had his own apartment

impacted the Court's decision that the son was not living with his parents for purposes of recovering under their policy. Id.

37. Similarly, in Nationwide Mutual Ins. Co. v. Budd-Baldwin, an injured passenger was not considered to be a "resident relative" of his insured sister, with whom he stayed with during the weekends in order to visit his fiancé. Budd-Baldwin, 947 F.2d 1098.

38. Because the insured's home was deemed more of a place of convenience for her brother, it was held that the brother was more of a visitor than a resident. Id.

39. The Court added that even temporary visits, though frequent or regular, are excluded from the definition of "regularly resides," regardless of however welcome the visits may be. Id.

40. Finally, in Nationwide Mutual Ins. Co. v. Kuentzler, the administrator of a deceased son's estate was attempting to recover UIM coverage under both parents' policies. Nationwide Mutual Ins. Co. v. Kuentzler, WL 1726512 (M.D. Pa. 2007).

41. The Court made the determination that the son was not a resident of his parents' home as his monthly visits were insufficient to establish residency. Although the parents maintained a room for the son at their house and the son received his mail and kept all his belongings there, the son had been living with his fiancé for the past 6 months in a separate residence in Ohio. Id.

42. Based on the above case law, it is evident that Travelers was correct in determining that coverage under Jacqueline Parzych's policy did not extend to Scott Parzych at the time of his accident as Scott was not a resident of Jacqueline Parzych's household at the time.

**WHEREFORE**, it is respectfully submitted that an order should be entered granting summary judgment, in the form of declaratory relief, to the Plaintiff in this matter.

                                        **KENT & McBRIDE, P.C.**

                                        BY _____
                                            Ernest F. Koschineg, Esquire
                                            Kelly C. Scheese, Esquire
Dated: 5/15/09                         Attorneys for Plaintiff
                                            Travelers Personal Insurance Company

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TRAVELERS PERSONAL INSURANCE COMPANY**<br><br>Plaintiff,<br><br>vs.<br>**ESTATE OF SCOTT PARZYCH**<br><br>Defendant<br><br>and<br><br>**JACQUELINE PARZYCH**<br><br>Defendant | CIVIL TRIAL DIVISION<br><br>No. 08-cv-3138 |

## BRIEF IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT, TRAVELERS PERSONAL INSURANCE COMPANY

I.   **STATEMENT OF FACTS:**

On November 15, 2007, Scott Parzych was tragically killed when a vehicle in which he was a passenger was involved in a fatal motor vehicle accident. At the time of Scott Parzych's death, Scott's wife, Julie Parzych, was an insured with Plaintiff, Travelers Personal Insurance Company (hereinafter referred to as "Travelers"). As Scott and Julie Parzych resided together at 30 West Vine Street, Hatfield, Pennsylvania 19440, Travelers paid Julie Parzych, the Administratrix of Scott Parzych's Estate (hereinafter referred to as the "Estate"), the policy limits for her underinsured motorist ("UIM") benefits. However, in addition to paying the Estate the policy limits for the UIM benefits under Julie Parzych's

policy, the Estate also made a claim for UIM benefits under the policy held by Scott's mother, Jacqueline Parzych. At the time of Scott's fatal accident, Jacqueline Parzych also held a policy of automobile insurance with Travelers. The Estate made this second claim for UIM benefits claiming that Scott was also a resident of his mother, Jacqueline Parzych's home at the time of his death.

It is the position of Travelers that Scott Parzych resided only with his wife, Julie, at 30 West Vine Street, Hatfield, Pennsylvania 19440, at the time of his accident. As such, coverage under Jacqueline Parzych's policy was found not to extend to Scott Parzych at the time of his accident as Scott was not a resident of Jacqueline Parzych's household. Subsequently, Travelers filed this case under the Declaratory Judgment Act in order to obtain a judicial declaration that Travelers is not obligated to provide UIM benefits to the Estate under the automobile insurance policy held by Jacqueline Parzych.

## II.   LEGAL ARGUMENT

### A.   Standard for Summary Judgment

The standard for summary judgment in a declaratory judgment action is the same as for any other type of relief. Tranguard Ins. Co. of America, Inc. v. Hinchey, 464 F. Supp. 2d 425 (M.D. Pa. 2006), citing Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Marketing Board, 298 F. 3d 201, 210 n. 12 (3d Cir. 2002). Pursuant to Federal Rule of Civil Procedure 56©, "Summary judgment should be rendered forthwith if the pleadings, depositions, answers to Interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." If the movant establishes that there is an absence of evidence establishing an element of the non moving prima facie case, summary judgment

is warranted. <u>Celetex Corp v. Catrett</u>, 477 US 317, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1987), <u>cert</u>. <u>den</u>., 499U.S. 921 (1991).

This standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248 (1986). A fact is material if proof of its existence, or nonexistence, would affect the outcome of the lawsuit. <u>Id</u>. An issue of material fact is "genuine" if the evidence is such that a reasonable jury might return a verdict for the nonmoving party. <u>Id</u>. at 257.

Once the movant adequately supports its motion pursuant to Federal Rule of Civil Procedure 56(c), the burden shifts to the non moving party to go beyond the mere pleadings and present evidence through affidavits, depositions, or admissions on file to show that there is a genuine issue for trial. <u>Id.</u> at 324. The genuine issue is one in which the evidence is such that a reasonable jury could return a verdict for the non moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 97 L.Ed. 2d 202 (1986). In this matter summary judgment is appropriate because no genuine issue of material fact exists. Scott Parzych did not reside with his mother, Jacqueline Parzych, at the time of his death, and the Estate is not entitled to benefits from her under-insured motorist policy.

**B.     Scott Parzych did not live at this parents' home at the time of his death and hence is not covered as a relative under his mother's insurance policy.**

Scott Parzych does not qualify as a resident of his mother's home under Pennsylvania law. Under Pennsylvania law, the concept of residency is different from that

of domicile. While domicile is considered to be a place where one has fixed his permanent home and intends to return following an absence, a residence is a factual place of abode that requires physical presence. It has been held that one's intention is not a relevant consideration when determining residency. Amica Mutual Ins. Co. v. Donegal Mutual Ins. Co., 545 A.2d 343 (Pa. Super. Ct. 1988) (regardless of the parties' intentions, the Court held that insured's daughter was not a resident of the insured's house despite evidence indicating that she stayed there three to five nights per month, received mail there, and kept personal belongings there including pets and multiple closets full of clothing). Similarly, Scott Parzych is not a resident of his mother's home despite the fact that he and his wife, who both reside elsewhere, keep belongings at his mother's home and occasionally stay at his mother's home for convenience purposes.

In St. Paul Fire and Marine Ins. Co. v. Barbara Lewis, et al., the Court examined a situation, like the one at hand, where an insurance policy afforded coverage to the family members "living with" the named insured. St. Paul Fire and Marine Ins. Co. v. Lewis, 935 F.2d 1428 (3d Cir. 1991). It was held by the Court in Lewis that the phrase "living with" required at least some regular, personal contact with the insured's home, and that occasional, sporadic, and temporary contacts were insufficient. Id.; See also Allstate Property & Casualty Ins. Co. v. Jaffe, WL 3911048 (E.D. Pa. 2008) (the term "resident" requires more than occasional, sporadic, and temporary contacts).

Furthermore, the Lewis Court opined that having belongings in the insured's household was insufficient to establish residency. Lewis, 935 F.2d 1428. In Lewis, although the insured's son frequented the insured's home to visit, eat meals, and celebrate holidays,

the insureds maintained a separate room for their son at their home where he kept personal belongings, the son's address on his license was that of the insureds, and the son received his mail at the insureds' home, the Court held that there was no evidence indicating that the son's visits occurred with any frequency or regularity to constitute that of a resident of the insured's household. Id. It should also be noted that the fact that the son had his own apartment impacted the Court's decision that the son was not living with his parents for purposes of recovering under their policy. Id.

The instant case likens the Lewis case in many ways. Travelers concedes that Scott had a room at his mother's home, and kept belongings there. Further, Travelers concedes that Scott's license at the time of his death listed his mother's address. However, Scott was married a few mere months before his tragic death. It is foreseeable that Scott did not change his driver's license information in that brief time period. Moreover, such evidence is not sufficient to establish residency.

Similarly, in Nationwide Mutual Ins. Co. v. Budd-Baldwin, an injured passenger was not considered to be a "resident relative" of his insured sister, with whom he stayed with during the weekends in order to visit his fiancé. Budd-Baldwin, 947 F.2d 1098. Because the insured's home was deemed more of a place of convenience for her brother, it was held that the brother was more of a visitor than a resident. Id. The Court added that even temporary visits, though frequent or regular, are excluded from the definition of "regularly resides," regardless of however welcome the visits may be. Id.

Finally, in Nationwide Mutual Ins. Co. v. Kuentzler, the administrator of a deceased son's estate was attempting to recover UIM coverage under both parents'

policies. <u>Nationwide Mutual Ins. Co. v. Kuentzler</u>, WL 1726512 (M.D. Pa. 2007). The Court made the determination that the son was not a resident of his parents' home as his monthly visits were insufficient to establish residency. Although the parents maintained a room for the son at their house and the son received his mail and

kept all his belongings there, the son had been living with his fiancé for the past 6 months in a separate residence in Ohio. <u>Id.</u>

Like Scott Parzych, the son in the <u>Kuentzler</u> case was listed as an "insured driver" on his parents' policy. However, the Court in that case determined that even an individual designated as an "insured driver" must still meet the requirements imposed by UIM coverage, including satisfying the definition of "relative." <u>Id</u>. at 28-31. Because, like Scott Parzych, the son in <u>Kuentzler</u> was unable to demonstrate he was a resident of his parents' home, coverage was properly denied.

Based on the above case law, it is evident that Travelers was correct in determining that coverage under Jacqueline Parzych's policy did not extend to Scott Parzych at the time of his accident as Scott was not a resident of Jacqueline Parzych's household at the time. As previously stated, Scott and Julie were married approximately three months prior to Scott's accident, and they had been living together in an apartment at 30 West Vine Street, Hatfield, Pennsylvania, with Julie's son from a previous relationship, Tyler, since their marriage. Both Julie and Scott were co-signors for the apartment lease. Furthermore, Scott received both mail and bills at the apartment at 30 West Vine Street, including Discover Card bills, a GM Card bills, other credit card bills, bank statements and cell phone bills. Additionally, Julie and Scott had a joint bank account listing both of them

as residing at 30 West Vine Street. In addition to Scott having an apartment which he considered his residence, the fact that Scott kept many personal belongings at his mother, Jacqueline's home (i.e. TV, dresser, bed, toiletries, clothing, etc.) is insufficient to establish residency as held by the case law above.

Furthermore, based on the examination under oath ("EUO") testimony of Julie Parzych and Jacqueline Parzych, it is clear that a majority of Scott's visits to his mother's house were more for convenience than anything else. Jacqueline Parzych testified that she often babysat Tyler while Scott and Julie went out, and that the two would stay at her home after their night out. It was also explained that Scott occasionally stayed over her house during snowstorms because his mother's home was closer to his job than the apartment. Scott and Julie were also in a pool league which was held closer to Jacqueline's home, and as a result, Scott and Julie would stay over at Jacqueline's house after the pool league was over for the night. Finally, Jacqueline Parzych testified that Scott merely stayed at her home approximately one time per week. Based on this testimony, it is clear that Scott Parzych can only be considered a visitor of Jacqueline's house, not a resident of the household.

Furthermore, although Jacqueline Parzych's insurance policy with Travelers listed Scott as a resident driver, she had originally obtained this policy with Travelers years before Scott even met Julie. Though she updated the policy throughout the years to include/exclude certain vehicles, she testified that she never updated the policy with regard to the listed drivers on the policy. In addition, during the deposition testimony of Steve Canuso, the independent insurance agent who wrote Jacqueline Parzych's insurance policy

with Travelers, Mr. Canuso testified that Scott was still listed on his mother's policy of insurance at the time of his death as a result of an administrative oversight. Mr. Canuso testified that he believed Scott was living in Hatfield with Julie at the time of his accident, and that he probably should have been taken off of Jacqueline's policy.

Summary judgment is mandated in this case. Scott Parzych was not a dual resident living with both his wife and mother. He lived with his wife and occasionally visited his mother. Those contacts are insufficient for purposes of determining residency. Moreover, there are no genuine issues of material facts. Travelers concedes that Scott visited his mother regularly, and kept certain belongings there. However, the law does not support the Estate's dual residency argument. Thus, Travelers is entitled to summary judgment.

## III.   CONCLUSION

For all the foregoing reasons, it is respectfully submitted that an Order granting summary judgment, in the form of declaratory relief, to the Plaintiff in this matter.

KENT & McBRIDE, P.C.

BY _____
Ernest F. Koschineg, Esquire
Kelly C. Scheese, Esquire
Attorneys for Plaintiff
Travelers Personal Insurance Company

Dated: 5/15/09