EXHIBIT "E"

 **TRAVELERS**

# AUTOMOBILE POLICY DECLARATIONS

**1. Named Insured**

JULIE CAJINA
30 W VINE ST
HATFIELD PA 194403043

**Your Agency's Name and Address**

CANUSO INS AGENCY INC
P O BOX 712
SPRING HOUSE PA 19477

Your Policy Number : 981333026 101 1
Your Account Number:

**For Policy Service Call** 215-643-7060
**For Claim Service Call** 1-800-CLAIM33

**2. Your Total Premium for the Policy Period is $1,587.00.**
   The policy period is from June 5, 2007 to December 5, 2007.

**3. Your  Vehicles**

| | | **Identification Numbers** |
|---|---|---|
| 1 | 2006 HYUND TUCSON GL | KM8JN12DX6U283418 |
| 2 | 2001 CHEVR SILVERADO | 2GCEK19T311136907 |

**4. Coverages, Limits of Liability and Premiums**

Insurance is provided only where a premium is shown for the coverage.

*IF COLLISION COVERAGE IS PROVIDED UNDER THIS POLICY, COVERAGE EXTENDS TO VEHICLES WHICH YOU RENT FOR 30 DAYS UNDER A RENTAL CAR COVERAGE AGREEMENT. PLEASE REMEMBER THAT COLLISION COVERAGE DOES NOT PAY FOR LOSS OF USE. PLEASE CONTACT YOUR TRAVELERS AGENT OR REPRESENTATIVE IF YOU HAVE QUESTIONS. IF YOU DO NOT CARRY COLLISION INSURANCE, THIS POLICY DOES NOT PAY FOR DAMAGE TO RENTAL VEHICLES.*

| | | 1 | 2 |
|---|---|---|---|
| | | 06 HYUND TUCSON GL | 01 CHEVR SILVERADO |
| A | - Bodily Injury<br>$25,000 each person<br>$50,000 each accident | $  116 | $  120 |
| B | - Property Damage<br>$25,000 each accident | 139 | 143 |
| D7 | - Uninsured Motorists<br>(Bodily Injury) Non-Stacked<br>$25,000 each person<br>$50,000 each accident<br>See Endorsement A37043 | 15 | 15 |
| D9 | - Underinsured Motorists<br>(Bodily Injury) Non-Stacked<br>$25,000 each person<br>$50,000 each accident<br>See Endorsement A37043 | 24 | 24 |

Continued on next page

PL-7782 5-94    818/0WW374

## 4. Coverages, Limits of Liability and Premiums (continued)

|  |  | 06 HYUND<br>TUCSON GL | 01 CHEVR<br>SILVERADO |
|---|---|---|---|
| E | - Collision<br>Actual Cash Value less<br>$500 deductible | 253 | 287 |
| F | - Comprehensive<br>(Other than Collision)<br>Actual Cash Value less<br>$500 deductible | 69 | 72 |
| G | - Extended Transportation Expense<br>$30 per day/$900 maximum | 11 | 11 |
| I | - Towing and Labor Costs<br>$75 per disablement<br>$50 per disablement | 3<br>- | -<br>2 |
| QA | - First Party Benefits Coverage<br>Limited Tort Option<br>See Endorsement A37021 | 118 | 108 |
| R | - Added First Party Benefits<br>B5-Income Loss<br>    Maximum Amount/Monthly Amount<br>    $5,000/$1,000<br>C7-Funeral Expenses<br>    $2,500<br>D6-Accidental Death<br>    $5,000<br>See Endorsement A37021 | 30 | 27 |

**Subtotals for your vehicles:**          $778          $809

**Total Premium for This Policy: $1,587**

**This is Not a bill.  You will be billed separately for this transaction.**

## 5. Information Used to Rate Your Policy

|  | 06 HYUND<br>TUCSON GL | 01 CHEVR<br>SILVERADO |
|---|---|---|
| Anti Theft Device |  |  |

Accidents and/or Traffic Violations Listed Below:

| Traffic Violations | 09/09/05<br>SCOTT |
|---|---|

**TRAVELERS**

| | |
|---|---|
| Named Insured: | JULIE CAJINA |
| Policy Number: | 981333026 101 1 |
| Policy Period: | June 5, 2007 to December 5, 2007. |
| Issued On: | May 30, 2007 |

## 5. Information Used to Rate Your Policy (continued)

**Drivers**

| | Date of Birth | Sex | Marital Status |
|---|---|---|---|
| JULIE | 12-15-80 | Female | Married |
| SCOTT | 11-20-78 | Male | Married |

**Vehicles**

| | Use of Vehicle | Location of Vehicle |
|---|---|---|
| 06 HYUND TUCSON GL | Commute | HATFIELD PA |
| 01 CHEVR SILVERADO | Commute | HATFIELD PA |

It is important that the above information is correct to ensure that your policy is properly rated. If there are errors or changes to this information, please notify your Travelers representative immediately.

## 6. Other Information

**Loss Payees**

01 CHEVR SILVERADO
VIN # 2GCEK19T311136907

PNC BANK
2730 LIBERTY AVE
PITTSBURGH, PA 19522

**Your Insurer**

The Travelers Home and Marine Insurance Company
6081 East 82nd St, Indianapolis, Indiana 46250
One Tower Square, Hartford, CT 06183

**Policy Endorsements**

A37013 Amendment of Policy Provisions - Pennsylvania
A37021 First Party Benefits Coverage - Pennsylvania
A37043 Uninsured/Underinsured Motorists Endorsement - Pennsylvania

Policy Edition  8          Policy Form  101          Issued on  05/30/07

Countersignature: _____

Thank you for insuring with Travelers. We appreciate your business. If you have any questions about your insurance, please contact your Travelers representative.

Continued on next page

PL-7782 5-94    818/0WW374

## FOR YOUR INFORMATION

Children & air bags. . . it's as easy as 1 - 2 - 3
1. Never put a child seat (those used with infants) in the front seat of a car with air bags.
2. Make sure all children are buckled up no matter where they sit. Unbuckled children can be hurt or killed by an air bag.
3. The rear seat (those with seat belts) is the safest place for children of any age to ride.

For information about how Travelers compensates independent agents and brokers, please visit www.Travelers.com or call our toll free telephone number 1-866-904-8348. You may also request a written copy from Marketing at One Tower Square, 2GSA, Hartford, Connecticut 06183.

The laws of the Commonwealth of Pennsylvania, as enacted by the General Assembly, only require that you purchase Liability and First Party Medical Benefits coverages. Any additional coverages, or coverages in excess of the limits required by law, are provided only at your request as enhancements to basic coverages. The premium for the mandatory coverages at the limits required by law and the tort option you previously elected are as follows:

| Coverage | Veh 1 | Veh 2 |
|---|---|---|
| Bodily Injury<br>  $15,000 each person/<br>  $30,000 each accident | $96.00 | $99.00 |
| Property Damage<br>  $5,000 each accident | $124.00 | $128.00 |
| First Party Medical | $118.00 | $108.00 |
| Subtotal | $338.00 | $335.00 |
| Total Amount     $673.00 | | |

You may purchase Uninsured and/or Underinsured Motorists Coverage at any available limits from $15,000/$30,000 up to your Bodily Injury Liability limits. You may reject these coverages entirely.

This is to certify that this is a reproduction, from the company's records, of the insurance policy between the insured and the insuring company as described on the Declarations Page. It is a full, true and complete reproduction of the insurance policy. No insurance is afforded hereunder

Signature _Nancy R. La Count_     Date _3-7-08_

PL-7782 5-94    818/0WW374


**TRAVELERS**

# Automobile Policy Booklet

# from Travelers

**Especially for:**
**JULIE CAJINA**

**Prepared by:**
**CANUSO INS AGENCY INC**

# The Contents of This Booklet

1. **Your Declarations:**

   A summary of your coverages, amounts of insurance, and premiums for those coverages under the policy.

2. **The Travelers Car Insurance Policy:**

   The policy contract describing coverages, rights, and obligations.

3. **Endorsements:**

   Additional coverages or policy provisions applicable to your policy.

4. **Important Notices:**

   Information required by your state but not part of your policy provisions.

# Important Phone Numbers

1. **For Policy Service:**

   Call your Travelers representative.
   (215) 643-7060

2. **To Report a Claim:**

   Call your Travelers agent or representative or the Travelers toll-free country-wide claim reporting service at 1-800-CLAIM-33(1-800-252-4633).

PL-7841  5-94

TOC10284

# YOUR PERSONAL AUTO POLICY QUICK REFERENCE

**DECLARATIONS PAGE**
   **Your Name and Address**
   **Your Auto or Trailer**
   **Policy Period**
   **Coverages and Amounts of Insurance**

|  | Beginning On Page |
|---|---|
| **AGREEMENT** | 1 |
| **DEFINITIONS** | 1 |

**LIABILITY**

| Insuring Agreement | 2 |
|---|---|
| Supplementary Payments | 2 |
| Exclusions | 2 |
| Limit of Liability | 4 |
| Out of State Coverage | 4 |
| Financial Responsibility | 4 |
| Other Insurance | 4 |

**MEDICAL PAYMENTS**

| Insuring Agreement | 5 |
|---|---|
| Exclusions | 5 |
| Limit of Liability | 6 |
| Other Insurance | 6 |

**UNINSURED MOTORISTS**

| Insuring Agreement | 6 |
|---|---|
| Exclusions | 7 |
| Limit of Liability | 7 |
| Other Insurance | 8 |
| Arbitration | 8 |

**DAMAGE TO YOUR AUTO**

| Insuring Agreement | 8 |
|---|---|
| Transportation Expenses | 9 |
| Exclusions | 10 |
| Limit of Liability | 11 |
| Payment of Loss | 11 |
| Loss Payable Clause | 11 |
| No Benefit to Bailee | 11 |
| Other Sources of Recovery | 11 |
| Appraisal | 11 |

**DUTIES AFTER AN ACCIDENT OR LOSS**

| General Duties | 12 |
|---|---|
| Additional Duties for Uninsured Motorists Coverage | 12 |
| Additional Duties for Collision and Comprehensive Coverages | 12 |

**GENERAL PROVISIONS**

| Bankruptcy | 12 |
|---|---|
| Changes | 12 |
| Fraud | 13 |
| Legal Action Against Us | 13 |
| Our Right to Recover Payment | 13 |
| Policy Period and Territory | 13 |
| Termination | 13 |
| Transfer of your Interest in this Policy | 14 |
| Two or More Auto Policies | 15 |



**Edition 8 of Policy Forms 101, 102, and LP**

# PERSONAL AUTO POLICY

## Travelers Property Casualty Companies
### Hartford, Connecticut
### (Each a Stock Insurance Company)

---

## AGREEMENT

---

In return for payment of the premium and subject to all the terms of this policy, we will provide the coverages you have selected. These are shown by premium entries in the Declarations. The Declarations is a part of this policy.

---

## DEFINITIONS

---

**A.** Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

**B.** "We", "us" and "our" refer to the Company shown in the Declarations providing this insurance.

**C.** For purposes of this policy, a private passenger type auto shall be deemed to be owned by a person if leased:

1. Under a written agreement to that person; and

2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

**D.** "Bodily injury" means bodily harm, sickness or disease, including death that results.

**E.** "Business" includes trade, profession or occupation.

**F.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

**G.** "Occupying" means in, upon, getting in, on, out or off.

**H.** "Property damage" means physical injury to, destruction of or loss of use of tangible property.

**I.** "Trailer" means a vehicle designed to be pulled by a:

1. Private passenger auto; or

2. Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.

**J.** "Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become the owner:

   a. a private passenger auto; or

   b. a pickup or van.

This provision (J.2.) applies only if:

   a. you acquire the vehicle during the policy period;

   b. you ask us to insure it within 30 days after you become the owner; and

   c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.

If the vehicle you acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if:

   a. you wish to add or continue Damage to Your Auto Coverages; or

   b. it is a pickup or van used in any "business" other than farming or ranching.

If the vehicle you acquire is in addition to any shown in the Declarations, it will have the

---



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Edition 8 of Policy forms
101, 102, and LP

broadest coverage we now provide for any ve-
hicle shown in the Declarations.

3. Any "trailer" you own.

4. Any auto or "trailer" you do not own while
   used as a temporary substitute for any
   other vehicle described in this definition
   which is out of normal use because of its:

a. breakdown;    d. loss; or

b. repair;    e. destruction.

c. servicing;

This provision (J.4.) does not apply to the
Damage To Your Auto Section.

---

# LIABILITY
## Coverage A - Bodily Injury
## Coverage B - Property Damage

---

## INSURING AGREEMENT

A. We will pay damages for "bodily injury" (Cover-
   age A) or "property damage" (Coverage B) for
   which any "insured" becomes legally responsible
   because of an auto accident. Damages include pre-
   judgment interest awarded against the "insured".
   We will settle or defend, as we consider appropri-
   ate, any claim or suit asking for these damages. In
   addition to our limit of liability, we will pay all de-
   fense costs we incur. Our duty to settle or defend
   ends when our limit of liability for these coverages
   has been exhausted. We have no duty to defend
   any suit or settle any claim for "bodily injury" or
   "property damage" not covered under this policy.

B. "Insured" as used in these coverages means:

   1. You or any "family member" for the owner-
      ship, maintenance or use of any auto or
      "trailer".

   2. Any person using "your covered auto".

   3. For "your covered auto", any person or or-
      ganization but only with respect to legal re-
      sponsibility for acts or omissions of a person
      for whom coverage is afforded under these
      Liability Coverages.

   4. For any auto or "trailer", other than "your cov-
      ered auto", any other person or organization
      but only with respect to legal responsibility for
      acts or omissions of you or any "family mem-
      ber" for whom coverage is afforded under
      these Liability Coverages. This provision
      (B.4.) applies only if the person or organiza-
      tion does not own or hire the auto or "trailer".

## SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on be-
half of an "insured":

   1. Up to $250 for the cost of bail bonds required
      because of an accident, including related traf-
      fic law violations. The accident must result in
      "bodily injury" or "property damage" covered
      under this policy.

   2. Premiums on appeal bonds and bonds to re-
      lease attachments in any suit we defend.

   3. Interest accruing after a judgment is entered in
      any suit we defend. Our duty to pay interest
      ends when we offer to pay that part of the
      judgment which does not exceed our limit of
      liability for these coverages.

   4. Up to $50 a day for loss of earnings, but not
      other income, because of attendance at hear-
      ings or trials at our request.

   5. Other reasonable expenses incurred at our re-
      quest.

## EXCLUSIONS

A. We do not provide Liability Coverages for any
   person:

   1. Who intentionally causes "bodily injury" or
      "property damage".

   2. For "property damage" to property owned or
      being transported by that person.

   3. For "property damage" to property:

      a. rented to;

      b. used by; or

---

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Edition 8 of Policy forms
101, 102, and LP

c.  in the care of;

that person.

This exclusion (A.3.) does not apply to "property damage" to a residence or private garage.

4.  For "bodily injury" to an employee of that person during the course of employment. This exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5.  For that person's liability arising out of the ownership or operation of a vehicle while it is being used to carry persons or property for a fee.  This exclusion (A.5.) does not apply to a share-the-expense car pool.

6.  While employed or otherwise engaged in the "business" of:

  a.  selling;    d.  storing; or

  b.  repairing;  e.  parking;

  c.  servicing;

vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:

  a.  you;

  b.  any "family member"; or

  c.  any partner, agent or employee of you or any "family member".

7.  Maintaining or using any vehicle while that person is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion A.6.  This exclusion (A.7.) does not apply to the maintenance or use of a:

  a.  private passenger auto;

  b.  pickup or van that you own; or

  c.  "trailer" used with a vehicle described in a. or b. above.

8.  Using a vehicle without a reasonable belief that that person is entitled to do so.

9.  For "bodily injury" or "property damage" for which that person:

  a.  is an insured under a nuclear energy liability policy; or

  b.  would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

  a.  Nuclear Energy Liability Insurance Association;

  b.  Mutual Atomic Energy Liability Underwriters; or

  c.  Nuclear Insurance Association of Canada.

**B.**  We do not provide Liability Coverages for the ownership, maintenance or use of:

1.  Any motorized vehicle having fewer than four wheels.

2.  Any vehicle, other than "your covered auto", which is:

  a.  owned by you; or

  b.  furnished or available for your regular use.

3.  Any vehicle, other than "your covered auto", which is:

  a.  owned by any "family member"; or

  b.  furnished or available for the regular use of any "family member".

However, this exclusion (B.3.) does not apply to your maintenance or use of any vehicle which is:

  a.  owned by a "family member"; or

  b.  furnished or available for the regular use of a "family member".

4.  Any vehicle, located inside a facility designed for racing, for the purpose of:

  a.  competing in; or

  b.  practicing or preparing for;

any prearranged or organized racing or speed contest.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## LIMIT OF LIABILITY

### A. Single Liability Limit

1. If the Declarations show a single limit of liability for Coverage A and Coverage B combined, this limit is our maximum limit of liability for all damages for "bodily injury" and "property damage" resulting from any one auto accident. This is the most we will pay regardless of the number of:

    a. "Insureds";

    b. Claims made;

    c. Vehicles or premiums shown in the Declarations; or

    d. Vehicles involved in the auto accident.

2. We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability. However, this provision (A.2.) will not change our total limit of liability.

### B. Split Liability Limits

If the Declarations show separate limits of liability for Coverage A and Coverage B, the limit of liability shown in the Declarations for each person for Coverage A is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Coverage A is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident. The limit of liability shown in the Declarations for each accident for Coverage B is our maximum limit of liability for all "property damage" resulting from any one auto accident. These limits are the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## MEDICAL PAYMENTS
## Coverage C

### INSURING AGREEMENT

**A.** We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury":

1. Caused by accident; and

2. Sustained by an "insured".

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

**B.** "Insured" as used in this coverage means:

1. You or any "family member":

   a. while "occupying"; or

   b. as a pedestrian when struck by;

   a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while "occupying" "your covered auto".

### EXCLUSIONS

We do not provide Medical Payments Coverage for any person for "bodily injury":

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.

2. Sustained while "occupying" "your covered auto" when it is being used to carry persons or property for a fee. This exclusion (2.) does not apply to a share-the-expense car pool.

3. Sustained while "occupying" any vehicle located for use as a residence or premises.

4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury".

5. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

   a. owned by you; or

   b. furnished or available for your regular use.

6. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

   a. owned by any "family member"; or

   b. furnished or available for the regular use of any "family member".

   However, this exclusion (6.) does not apply to you.

7. Sustained while "occupying" a vehicle without a reasonable belief that that person is entitled to do so.

8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured". This exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:

   a. private passenger auto;

   b. pickup or van that you own; or

   c. "trailer" used with a vehicle described in a. or b. above.

9. Sustained while "occupying" any vehicle located inside a facility designed for racing, for the purpose of:

   a. competing in; or

   b. practicing or preparing for;

   any prearranged or organized racing or speed contest.

10. Caused by or as a consequence of:

    a. discharge of a nuclear weapon (even if accidental);

    b. war (declared or undeclared);

    c. civil war;

    d. insurrection; or

    e. rebellion or revolution.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PL-10284  12-00

Page 5 of 15

11. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

   a. nuclear reaction;

   b. radiation; or

   c. radioactive contamination.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

   1. "Insureds";

   2. Claims made;

   3. Vehicles or premiums shown in the Declarations; or

   4. Vehicles involved in the accident.

B. Any amounts otherwise payable for expenses under this coverage shall be reduced by any amounts paid or payable for the same expenses under Coverage A or Coverage D.

C. No payment will be made unless the injured person or that person's legal representative agrees in writing that any payment shall be applied toward any settlement or judgment that person receives under Coverage A or Coverage D.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

# UNINSURED MOTORISTS
## Coverage D

## INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

   1. Sustained by an "insured"; and

   2. Caused by an accident.

   The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

   Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this coverage means:

   1. You or any "family member".

   2. Any other person "occupying" "your covered auto".

   3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

   1. To which no bodily injury liability bond or policy applies at the time of the accident.

   2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limits for bodily injury liability must be less than the minimum limits for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

   3. Which is a hit and run vehicle whose operator or owner cannot be identified and which hits:

      a. you or any "family member";

      b. a vehicle which you or any "family member" are "occupying"; or

      c. "your covered auto".

   4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

      a. denies coverage; or

      b. is or becomes insolvent.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member".

2. Owned or operated by a self-insurer under any applicable motor vehicle law.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any person:

1. While "occupying", or when struck by, any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. If that person or the legal representative settles the "bodily injury" claim without our consent.

3. While "occupying" "your covered auto" when it is being used to carry persons or property for a fee. This exclusion (A.3.) does not apply to a share-the-expense car pool.

4. Using a vehicle without a reasonable belief that that person is entitled to do so.

B. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. workers' compensation law; or

2. disability benefits law.

C. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages including legal costs related thereto.

## LIMIT OF LIABILITY

### A. Single Limit

If the Declarations show a single limit of liability for Coverage D, this limit is our maximum limit of liability for all damages for "bodily injury" result-

ing from any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

### B. Split Limits

If the Declarations show separate limits of liability for each person and each accident, the limit of liability shown for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident. These limits are the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

C. Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:

1. Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Coverage A; and

2. Paid or payable because of the "bodily injury" under any of the following or similar law:

   a. workers' compensation law; or

   b. disability benefits law.

D. Any payment under this coverage will reduce any amount that person is entitled to recover for the same damages under Coverage A.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## OTHER INSURANCE

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

## ARBITRATION

A. If we and an "insured" do not agree:

1. Whether that person is legally entitled to recover damages under this coverage; or

2. As to the amount of damages which are recoverable by that "insured" from the owner or operator of an "uninsured motor vehicle".

either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

D. Instead of this method, we and the "insured" may agree to use another method of arbitration.

---

## DAMAGE TO YOUR AUTO
### Coverage E - Collision
### Coverage F - Comprehensive
### (Other than Collision)
### Coverage G - Extended Transportation Expenses
### Coverage I - Towing and Labor Costs

---

## INSURING AGREEMENT

A. **Collision and Comprehensive (Other than Collision)**. We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment. We will pay for such loss to "your covered auto" minus any applicable deductible shown in the Declarations. We will pay for loss to "your covered auto" caused by:

1. "Collision" only if the Declarations indicate that Coverage E - Collision is provided for that auto.

2. Other than "collision" only if the Declarations indicate that Coverage F - Comprehensive is provided for that auto.

If there is such a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations. We will not subtract any deductible amount from the amount we will pay for a loss to a "non-owned auto".

B. **Extended Transportation Expenses**. When there is a loss to a "your covered auto" described in the Declarations for which a specific premium charge indicates that Coverage G - Extended Transportation Expenses is afforded, or to a "non-owned auto", we will pay, without application of a deductible, up to the amount per day to a maximum amount as shown in the Declarations for:

---

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

1. Transportation expenses incurred by you.

2. Loss of use expenses for which you become legally responsible in the event of loss to a "non-owned auto".

This coverage applies only if:

1. "Your covered auto" or the "non-owned auto" is withdrawn from use for more than 24 hours; and

2. The loss is caused by "collision" or is covered under Coverage F - Comprehensive of this policy.

However, this coverage does not apply when there is a total theft of "your covered auto" or a "non-owned auto". Such coverage is provided under Coverage F of this policy.

Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto".

C. **Towing and Labor Costs.** We will pay towing and labor costs incurred each time "your covered auto" or any "non-owned auto" is disabled, up to the limit of liability shown in the Declarations for Coverage I - Towing and Labor Costs as applicable to that vehicle. If a "non-owned auto" is disabled, we will provide the broadest towing and labor costs coverage applicable to any "your covered auto" shown in the Declarations. We will only pay for labor performed at the place of disablement.

D. "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object. Loss caused by the following is considered other than "collision":

1. Missiles or falling objects;
2. Fire;
3. Theft or larceny;
4. Explosion or Earthquake;
5. Windstorm;
6. Hail, water or flood;
7. Malicious mischief or vandalism;
8. Riot or civil commotion;
9. Contact with bird or animal; or
10. Breakage of glass.

If breakage of glass is caused by a "collision" you may elect to have it considered a loss caused by "collision".

E. "Non-owned auto" means:

1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

   a. breakdown;
   b. repair;
   c. servicing;
   d. loss; or
   e. destruction.

## TRANSPORTATION EXPENSES

In addition, under Coverage F, we will pay, without application of a deductible, up to the greater of the following amounts:

1. $15 per day, to a maximum of $450; or

2. For a "your covered auto", the amount per day, to a maximum amount shown, if any, on the Declarations for Coverage G for that specific "your covered auto"; or

3. For a "non-owned auto", the amount per day, to a maximum amount shown, if any, on the Declarations for Coverage G for any one "your covered auto".

This applies only in the event of the total theft of "your covered auto" or a "non-owned auto". The coverage applies to a "your covered auto" only when the Declarations show that Coverage F is provided for that specific "your covered auto". The coverage applies to a "non-owned auto" if the Declarations show that Coverage F is provided for any "your covered auto".

We will pay:

1. Transportation expenses incurred by you in the event of the total theft of "your covered auto"; or

2. Loss of use expenses for which you become legally responsible in the event of a total theft of a "non-owned auto".

We will pay only those expenses incurred during the period:

1. Beginning 48 hours after the theft; and

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Edition 8 of Policy forms
101, 102, and LP

2. Ending when "your covered auto" or the "non-owned auto" is returned to use, or, we pay or offer to pay for its loss.

## EXCLUSIONS

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used to carry persons or property for a fee. This exclusion (1.) does not apply to a share-the-expense car pool.

2. Damage due and confined to:

   a. wear and tear;

   b. freezing;

   c. mechanical or electrical breakdown or failure; or

   d. road damage to tires.

   This exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto".

3. Loss due to or as a consequence of:

   a. radioactive contamination;

   b. discharge of any nuclear weapon (even if accidental);

   c. war (declared or undeclared);

   d. civil war;

   e. insurrection; or

   f. rebellion or revolution.

4. Loss to equipment designed for the reproduction of sound and any accessories used with such equipment. This exclusion (4.) does not apply if the equipment is permanently installed in "your covered auto" or any "non-owned auto".

5. Loss to tapes, records or other devices for use with equipment designed for the reproduction of sound.

6. Loss to a camper body or "trailer" you own which is not shown in the Declarations. This exclusion (6.) does not apply to a camper body or "trailer" you:

   a. acquire during the policy period; and

   b. ask us to insure within 30 days after you become the owner.

7. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

8. Loss to:

   a. TV antennas;

   b. awnings or cabanas; or

   c. equipment designed to create additional living facilities.

9. Loss to any of the following or their accessories:

   a. citizens band radio;

   b. two-way mobile radio;

   c. telephone; or

   d. scanning monitor receiver.

   This exclusion (9.) does not apply if the equipment is permanently installed in the opening of the dash or console of "your covered auto" or any "non-owned auto". This opening must be normally used by the auto manufacturer for the installation of a radio.

10. Loss to equipment designed or used for the detection or location of radar or laser.

11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

    a. selling;        d. storing; or

    b. repairing;      e. parking;

    c. servicing;

    vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in any "business" not described in exclusion 11. This exclusion (12.) does not apply to the maintenance or use by you or any "family member" of a "non-owned auto" which is a private passenger auto or "trailer".

13. Loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by government or civil authorities because you or any "family member":

    a. engaged in illegal activities; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Edition 8 of Policy forms
101, 102, and LP

b. failed to comply with Environmental Protection Agency or Department of Transportation standards.

This exclusion (13.) does not apply to the interests of Loss Payees in "your covered auto".

14. Loss to "your covered auto" or any "non-owned auto", located inside a facility designed for racing, for the purpose of:

a. competing in; or

b. practicing or preparing for;

any prearranged or organized racing or speed contest.

15. Loss to, or loss of use of, a "non-owned auto" rented by:

a. you; or

b. any "family member";

if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member", pursuant to the provisions of any applicable rental agreement or state law.

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property; or

2. Amount necessary to repair or replace the property with other property of like kind and quality.

However, the most we will pay for loss to any "non-owned auto" which is a "trailer" is $500.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.

Note: Our Limit of Liability under Damage to Your Auto does not extend to any loss in market or resale value which may result from a direct and accidental loss to "your covered auto" or any "non-owned auto".

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

## LOSS PAYABLE CLAUSE

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations. This insurance with respect to the interest of the loss payee, shall not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion or embezzlement of "your covered auto". However, we reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. We will mail the loss payee written notice at least 10 days before the effective date of cancellation.

When we pay the loss payee we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. any coverage provided by the owner of the "non-owned auto";

2. any other applicable physical damage insurance;

3. any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A deci-



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Edition 8 of Policy forms
101, 102, and LP

sion agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

**B.** We do not waive any of our rights under this policy by agreeing to an appraisal.

## DUTIES AFTER AN ACCIDENT OR LOSS

### GENERAL DUTIES

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**A.** We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

**B.** A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:

   a. to physical exams by physicians we select. We will pay for these exams.

   b. to examination under oath and subscribe the same.

4. Authorize us to obtain:

   a. medical reports; and

   b. other pertinent records.

5. Submit a proof of loss when required by us.

### ADDITIONAL DUTIES FOR UNINSURED MOTORISTS COVERAGE

A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit and run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

### ADDITIONAL DUTIES FOR COLLISION AND COMPREHENSIVE COVERAGES

A person seeking coverage for Collision or Comprehensive (Other than Collision) must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

**A.** This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

**B.** If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

3. The place of principal garaging of insured vehicles;

4. Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

## FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

## LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under the Liability Coverages, no legal action may be brought against us until:

1. We agree in writing that the "insured" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights in this paragraph (A.) do not apply, under the Damage to Your Auto Coverages, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment less reasonable attorney fees and a proportionate share of the cost of recovery.

## POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

B. The policy period, and each successive policy period, begins and ends at 12:01 a.m. standard time at your address.

C. The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

A. **Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

a. returning this policy to us; or

b. giving us advance written notice of the date cancellation is to take effect.



Includes copyrighted material of Insurance Services Office, Inc., with its permission.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown there:

    a. at least 10 days notice of cancellation:

        (1) if cancellation is for nonpayment of premium; or

        (2) if notice is mailed during the first 60 days this policy is in effect and this is not a continuation policy; or

    b. at least 30 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a continuation policy, we will cancel only:

    a. for nonpayment of premium; or

    b. if your driver's license or that of:

        (1) any driver who lives with you; or

        (2) any driver who customarily uses "your covered auto";

    has been suspended or revoked. This must have occurred:

        (1) during the policy period; or

        (2) since the last anniversary of the original effective date if the policy period is other than 1 year; or

    c. if the policy was obtained through material misrepresentation.

4. Nonpayment of Premium. Nonpayment of premium shall mean failure to pay any premium or premium installment when due whether payable directly to us or through a premium financing plan or credit extension.

**B. Non Renewal.** If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown there. Notice will be mailed at least 30 days before the end of the policy period. If the policy period is other than 1 year, we will have the right not to continue it only at each anniversary of its original effective date. If that date is the 29th, 30th, or 31st of a month, we may consider the first day of the next month to be this anniversary.

**C. Automatic Termination.** If we offer to continue and you or your representative do not accept, this policy will automatically terminate without notice of termination at the end of the current policy period. Failure to pay the required continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**D. Other Termination Provisions.**

1. If the law in effect in your state at the time this policy is issued or continued:

    a. requires a longer notice period;

    b. requires a special form or procedure for giving notice; or

    c. modifies any of the stated termination reasons;

    we will comply with those requirements.

2. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

3. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

4. The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the rep-

---

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Edition 8 of Policy forms
101, 102, and LP

resentative's legal responsibility to maintain or use "your covered auto".

**B.** Coverage will only be provided until the next anniversary of the policy's original effective date.

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

This policy is signed for the member company of Travelers which is the insurer under this policy.

Bruce A. Backberg
Senior Vice President and
Corporate Secretary

Joseph Lacher
Chief Executive Officer
Personal Lines

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

PL-10284  12-00       Page 15 of 15       Edition 8 of Policy forms
101, 102, and LP

Case 2:08-cv-03138-AB   Document 22-2   Filed 05/15/09   Page 26 of 76

# AMENDMENT OF POLICY PROVISIONS - PENNSYLVANIA

## I. DEFINITIONS

The Definitions section is amended as follows:

**A. The following definitions are added:**

"Serious injury" means a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement.

"Economic loss" means medical and other out-of-pocket expenses.

"Noneconomic loss" means pain and suffering and other nonmonetary damages.

## II. TORT LIABILITY INSURANCE OPTIONS

The following provisions are added:

**A. LIMITED TORT OPTION**

If the Declarations shows that Coverage QA is provided, the Limited Tort Option applies. Each "insured" who is bound by this option may seek compensation only for "economic loss" suffered because of "bodily injury" caused by accident as the consequence of the fault of another person. However, each "insured" may recover damages as if the "insured" damaged had elected the Full Tort Option:

1. If the bodily injury suffered is a "serious injury"; or

2. With respect to claims against a person in the business of designing, manufacturing, repairing, servicing or otherwise maintaining motor vehicles arising out of a defect in such motor vehicle which is caused by or not corrected by an act or omission, in the course of such business, other than a defect in a motor vehicle which is operated by such business; or

3. If injured while occupying a motor vehicle other than a private passenger motor vehicle as defined in the Pennsylvania Motor Vehicle Financial Responsibility Law of 1984, as amended; or

4. If the person at fault:

   a. is convicted, or accepts Accelerated Rehabilitative Disposition for driving under the influence of alcohol or a controlled substance in that accident; or

   b. is operating a motor vehicle registered in another state; or

   c. intends to cause intentional injury; or

   d. has not maintained financial responsibility as required by Pennsylvania law;

   provided that nothing in Paragraphs a. through d. shall affect the limitation placed on a person

against recovering noneconomic damages under Uninsured Motorists or Underinsured Motorists Coverage.

**B. FULL TORT OPTION**

If the Declarations shows that Coverage QB is provided, the Full Tort Option applies. Each "insured" bound by this option may seek compensation for "noneconomic loss" claimed and "economic loss" suffered because of bodily injury caused by accident as the consequence of the fault of another person.

**C. WHO IS AN INSURED**

As used in this section (II), an "insured" means you, any "family member" or a minor in the custody of either you or any "family member".

**D. OTHER INSURANCE**

1. If you are an "insured" under more than one liability insurance policy, and the policies have conflicting tort options, the policy providing the Full Tort Option applies.

2. If an "insured", other than you, is covered by more than one liability insurance policy, and the policies have conflicting tort options:

   a. The "insured" is bound by the tort option of the policy associated with the motor vehicle the "insured" is "occupying" at the time of the accident.

   b. The Full Tort Option applies if the insured is not "occupying" a motor vehicle at the time of the accident.

## III. LIABILITY-COVERAGE A AND COVERAGE B

The Liability section is amended as follows:

**A.** Paragraph A. of the Insuring Agreement is replaced by the following:

**A.** We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

**B.** The following is added to the Supplementary Payments Provision:

Endorsement Symbol Number
A37013

6. Prejudgment interest awarded against the "insured" on the part of the judgment we pay. Any prejudgment interest awarded against the "insured" is subject to the applicable Pennsylvania Rules of Civil Procedure.

## IV. MEDICAL PAYMENTS - COVERAGE C

The last sentence of Section A of the Insuring Agreement does not apply to funeral expenses.

## V. GENERAL PROVISIONS

The General Provisions are amended as follows:

A. Sections A., B., and C. of the Termination provision are replaced as follows:

A. **Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured shown on the Declarations may cancel by:

   a. Returning this policy to us; or

   b. Giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

   a. At least 15 days notice of cancellation:

   (1) If notice is effective within the first 60 days this policy is in effect and this is not a renewal or continuation policy;

   (2) For nonpayment of premium;

   (3) If the driver's license of the named insured shown in the Declarations has been suspended or revoked after the effective date if this policy has been in effect less than one year; or if the policy has been in effect longer than one year, since the last anniversary of the original effective date; or

   b. At least 60 days notice if the policy was obtained through material misrepresentation.

   Our right to cancel this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

B. **Nonrenewal.** If we decide not to renew or continue this policy, we will mail notice at least 60 days before the expiration date of the policy to the named insured shown in the

Declarations page at the address shown on that page.

If the policy period is other than 1 year, we will have the right not to continue it only at each anniversary of its original effective date. If that date is the 29th, 30th, or 31st of a month, we may consider the first day of the next month to be this anniversary.

However, our right to nonrenew this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

C. **Automatic Termination.** The policy will automatically terminate on the expiration date of any annual policy period without notice if you fail to pay when due any premium installment for this policy or its continuation whether payable directly to us, or through a premium finance plan or credit extension.

This policy, if not already terminated under the terms of this condition, will automatically terminate without notice on the effective date of any other automobile insurance policy, but only for any vehicle described in both policies.

B. The following provision is added:

**CONSTITUTIONALITY CLAUSE**

The premium for, and the coverages of, this policy have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. In the event a court, from which there is no appeal, declares or enters a judgment the effect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we will have the right to recompute the premium payable for the policy and void or amend the policy provisions, subject to the approval of the Insurance Commissioner.

Endorsement Symbol Number
A37013

## FIRST PARTY BENEFITS COVERAGE - PENNSYLVANIA

The provisions of the Policy apply unless modified by this endorsement.

## I. DEFINITIONS

With respect to all First Party Benefits Coverage:

"The act" means the Pennsylvania Motor Vehicle Financial Responsibility Law of 1984, as amended.

In addition, the following words and phrases are defined for all First Party Benefits coverage.

"Accidental death" means the death of you or any family member from "bodily injury" caused by accident, if the death occurs within 24 months from the date of the accident.

"Bodily injury" means accidental bodily harm to a person and that person's resulting illness, disease or death.

"Funeral expense" means reasonable expenses incurred for, and directly related to, the funeral, burial, cremation or other form of disposition of the remains of the deceased insured. The expenses must be incurred as a result of the death of the "insured" and within 24 months from the date of the accident.

"Income loss" means eighty (80%) percent of gross income actually lost by an "insured". "Income loss" also means reasonable expenses actually incurred for hiring:

(a) a substitute to perform the work a self-employed "insured" would have performed except for "bodily injury", or

(b) special help, thereby enabling a person to work, thereby reducing loss of gross income.

"Income loss" does not include:

(a) loss of expected income for any period following the death of an insured; or

(b) expenses incurred for services performed following the death of an "insured"; or



(c) any loss of income during the first five (5) working days the "insured" did not work after the accident because of the "bodily injury".

"Insured" means:

1. you or any "family member";
2. any other person:
   a. while "occupying" "your covered auto"; or
   b. while a pedestrian if injured as a result of an accident in Pennsylvania involving "your covered auto".

   If "your covered auto" is parked and unoccupied it is not a "motor vehicle" involved in an accident unless it was parked in a manner as to create an unreasonable risk of injury.

"Medical expenses" means reasonable and necessary charges incurred for:

(a) medical treatment, including but not limited to:
   (1) medical, hospital, surgical, nursing and dental services;
   (2) medications, medical supplies and prosthetic devices; and
   (3) ambulance;

(b) medical and rehabilitative services, including but not limited to:
   (1) medical care;
   (2) licensed physical therapy, vocational rehabilitation and occupational therapy;
   (3) osteopathic, chiropractic, psychiatric and psychological services; and
   (4) optometric services, speech pathology and audiology;

(c) non-medical remedial care and treatment rendered in accordance with a recognized religious method of healing.

All medical treatment and medical and rehabilitative services must be provided by or prescribed by a person or facility approved by the Department of Health, the equivalent

TIC
PL-6736  12-96

Endorsement Symbol Number
A37021

governmental agency responsible for health programs or the accrediting designee of a department or agency of the state in which those services are provided.

Payment of "medical expenses" incurred after 18 months from the date of the accident causing "bodily injury" shall be made only if within 18 months from the date of the accident, it is ascertainable with reasonable medical probability that further expenses may be incurred as a result of the injury.

"Motor vehicle" means a self-propelled vehicle, operated or designed for use upon public roads. However, "motor vehicle" does not include a vehicle operated:

1. By muscular power; or
2. On rails or tracks.

"Named insured" means the person or organization named in Item 1 in the Declarations.

"Your covered auto" means a "motor vehicle":

1. to which liability coverage under this policy applies and for which a specific premium is charged; and
2. for which you maintain First Party Benefits coverage as required under "the act".

## II. BENEFITS

### A   COVERAGE QA* – BASIC FIRST PARTY BENEFIT
### COVERAGE QB** – BASIC FIRST PARTY BENEFIT

*Indicates that the limited tort option described in "the act" was selected.

**Indicates that the full tort option described in "the act" was selected.

We will pay Basic First Party Benefits consisting of Basic "Medical Expenses" to or for an insured who sustains "bodily injury" caused by accident arising out of the maintenance or use of a "motor vehicle". Our Limit of Liability for Basic "Medical Expenses" is $5,000.

### B.   COVERAGE R – ADDED FIRST PARTY BENEFITS

If Coverage R appears in the Declarations, we will pay in addition to the Basic First Party Benefit, Added First Party Benefits to or for an "insured" who sustains "bodily injury" caused by an accident arising out of the maintenance or use of a "motor vehicle". Added First Party Benefits consist of the following if shown as applicable in the Declarations:

1. Increased "medical expenses";
2. "Income loss";
3. "Funeral expense"; and
4. "Accidental death".

1. **Option A (INCREASED MEDICAL EXPENSES).** This option applies if option "A4", "A5", "A6", or "A7" appears in the Declarations following Coverage R.

   The Limit of Liability for the Basic Medical Expenses is increased to the amount shown in the following schedule for the "A" option shown in the Declarations.

   **A Option Schedule**

   | Option | Amount |
   |--------|--------|
   | A4 | $10,000 |
   | A5 | $25,000 |
   | A6 | $50,000 |
   | A7 | $100,000 |

2. **Option B (INCOME LOSS).** This option applies if option "B4", "B5", "B6", "B7", or "B8" appears in the Declarations following Coverage R.

   The Limit of Liability for "income loss" is the "Maximum Amount" shown in the following schedule for the "B" option shown in the Declarations. The Limit of Liability for any one month is the "Monthly Amount" shown for that option in the following schedule.

**B Option Schedule**

| Option | Maximum Amount | Monthly Amount |
|--------|----------------|----------------|
| B4 | $15,000 | $1,500 |
| B5 | $5,000 | $1,000 |
| B6 | $15,000 | $1,000 |
| B7 | $25,000 | $1,500 |
| B8 | $50,000 | $2,500 |

3. **Option C (FUNERAL EXPENSE).**
This option applies if option "C6" or "C7" appears in the Declarations following Coverage R.

The Limit of Liability for "funeral expense" is the amount shown in the following schedule for the "C" option shown in the Declarations.

**C Option Schedule**

| Option | Amount |
|--------|--------|
| C6 | $1,500 |
| C7 | $2,500 |

4. **Option D (ACCIDENTAL DEATH).**
This option applies if option "D6", "D7" or "D8" appears in the Declarations following Coverage R.

The Limit of Liability for "accidental death" is the amount shown in the following schedule for the "D" option shown in the Declarations.

**D Option Schedule**

| Option | Amount |
|--------|--------|
| D6 | $5,000 |
| D7 | $10,000 |
| D8 | $25,000 |

5. **Options H, J, K and L (Combination First Party Benefits).** One of these options apply if option "H" "J" "K", or "L" appears in the Declarations following Coverage R.

The Limit of Liability for Basic "Medical Expenses", Increased "Medical Expenses", "Income Loss", "Funeral Expense" and "Accidental Death" combined is the amount shown as "total limit" in the following schedule for the option shown in the Declarations. The "total limit" is the most we will pay as a result of "bodily injury" to any one "insured" as the result of any one accident. However, the most we will pay for:

A. "Funeral Expense" is $2,500.

B. "Accidental Death" is the amount shown as "Accidental Death" Benefit in the following schedule for that option.

**H J K and L Option Schedule**

| Option | Total Limit | Accidental Death Benefit |
|--------|-------------|--------------------------|
| H | $50,000 | $10,000 |
| J | $100,000 | $10,000 |
| K | $177,500 | $25,000 |
| L | $277,500 | $25,000 |

We will only pay for expenses or loss incurred within three years from the date of the accident.

**EXCLUSIONS**

We do not provide benefits for "bodily injury":

1. Sustained by any person while intentionally causing or attempting to cause "bodily injury" to:

   a. himself;

   b. herself; or

   c. any other person.

2. Sustained by any person while committing a felony.

3. Sustained by any person while seeking to elude lawful apprehension or arrest by a law enforcement official.

4. Sustained by any person while maintaining or using a "motor vehicle" knowingly converted by that person. However, this exclusion (4.) does not apply to:

   a. You; or

   b. any "family member".

5. Sustained by any person who, at the time of the accident:

   a. is the owner of one or more registered "motor vehicles" and none of those "motor vehicles" have in effect the financial



TIC
PL-6736 12-96

Page 3 of 5

Endorsement Symbol Number
A37021

responsibility required by "the act", or

b. is "occupying" a "motor vehicle" owned by that person for which the financial responsibility required by "the act" is not in effect.

6. Sustained by any person maintaining or using a "motor vehicle" while located for use as a residence or premises.

7. Sustained by any person injured as a result of conduct within the course of the business of repairing, servicing or otherwise maintaining "motor vehicles". This exclusion (7.) does not apply if the conduct is off the business premises.

8. Sustained by a pedestrian if the accident occurs outside of Pennsylvania. This exclusion (8.) does not apply to:

a. You; or

b. any "family member".

9. Sustained by any person while "occupying":

a. a recreational vehicle designed for use off public roads; or

b. a motorcycle, moped or similar-type vehicle.

10. Caused by or as a consequence of:

a. discharge of a nuclear weapon (even if accidental);

b. war (declared or undeclared);

c. civil war;

d. insurrection; or

e. rebellion or revolution.

11. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

a. nuclear reaction;

b. radiation; or

c. radioactive contamination.

## LIMIT OF LIABILITY

The Limit of Liability for all the First Party Benefits that apply is the most we will pay to or for each "insured" as the result of any one accident. This is the most we will pay regardless of the number of:

1. Claims made;

2. Vehicles or premiums shown in the Declarations;

3. Vehicles involved in the accident; or

4. Insurers providing First Party Benefits.

If combination First Party Benefits are afforded, we will apply the total limit of liability to provide any separate limits required by "the act" for all First Party Benefits. This provision will not change our total limit of liability.

Any amount payable under all First Party Benefits Coverage shall be excess over any amounts paid, payable or required to be provided to an "insured" under any workers' compensation law or similar law.

## PRIORITIES OF POLICIES

We will pay all First Party Benefits in accordance with the order of priorities set forth by "the act". We will not pay if there is another insurer at a higher level of priority. The First category listed below is the highest level of priority and the Fourth category listed below is the lowest level of priority. The priority order is:

First: The insurer providing benefits to the "insured" as a "named insured".

Second: The insurer providing benefits to the "insured" as a "family member" who is not a "named insured" under another policy providing coverage under "the act".

Third: The insurer of the "motor vehicle" which the "insured" is "occupying" at the time of the accident.

Fourth: The insurer providing benefits on any "motor vehicle" involved in the accident if the "insured" is:

a. a pedestrian; and

b. not provided first party benefits under any other automobile policy.

In this priority, an unoccupied parked "motor vehicle" is not a "motor

vehicle" involved in an accident unless it was parked in a manner as to create an unreasonable risk of injury.

If 2 or more policies have equal priority within the highest applicable priority level:

1. The insurer against which the claim is first made shall process and pay the claim, up to its limit of liability, as if wholly responsible subject to subsequent contribution pro rata from any other insurer for the benefits paid and the cost of processing the claim. If such contribution is sought among insurers under the Fourth priority, proration shall be based on the number of involved motor vehicles; and

2. The maximum recovery under all policies will not exceed the amount payable under the policy with the highest dollar limits of benefits.

## III. CONDITIONS

A. Notice. If an accident occurs, written notice adequately identifying the insured and reasonably accessible facts concerning the time, place and circumstances of the accident shall be given as soon as practicable by or on behalf of each insured to us or any of our authorized agents.

B. Medical Reports; Proof of Claim. As soon as practicable the insured, or someone on his or her behalf, shall give us proof of claim, under oath if required, fully describing the nature and extent of "bodily injury", treatment and rehabilitation received and contemplated and other information to assist us in determining the amount due and payable.

Proof of claim shall be made upon forms furnished by us unless we fail to supply such forms within 15 days after receiving notice of claim.

The "insured" shall submit to mental and physical examinations by physicians selected by us when and as often as we may reasonably require. We will pay the costs of such examinations.

The "insured" (or, in the event of such person's incapacity or death, his or her legal representative) shall, if we request, sign papers to enable us to obtain medical reports and copies of records. A copy of such medical report will be forwarded to such "insured" upon his or her written request.

If "income loss" benefits are claimed, the "insured" presenting such claim shall authorize us to obtain details of all earnings paid to him or her by an employer or earned by him or her since the time of the injury or during the year immediately preceding the date of the accident.

C. Customary Charges For Treatment. The amount we will pay to a person or institution providing treatment, accommodation, products or services to an "insured" for an injury covered by benefits for "medical expenses" shall not exceed the amount the person or institution customarily charges for like treatment, accommodations, products and services in cases involving no insurance.

## NON-DUPLICATION OF BENEFITS

No one will be entitled to recover duplicate payments for the same elements of loss under this or any other similar automobile insurance including self-insurance.

## PAYMENT OF ACCIDENTAL DEATH BENEFITS

The "accidental death" Benefit under this policy will be paid to the executor or administrator of the deceased "insured's" estate. If there is no executor or administrator, benefits shall be paid to:

1. The deceased "insured's" surviving spouse; or

2. If there is no surviving spouse, the deceased "insured's" children; or

3. If there is no surviving spouse or surviving children, to the deceased "insured's" estate.

# UNINSURED/UNDERINSURED MOTORISTS ENDORSEMENT - PENNSYLVANIA

The provisions of this endorsement replace the Uninsured Motorists Insurance provisions of the policy.

## UNINSURED MOTORISTS COVERAGE

### COVERAGE D6 - UNINSURED MOTORISTS (BODILY INJURY) STACKED

### COVERAGE D7 - UNINSURED MOTORISTS (BODILY INJURY) NON-STACKED

## UNDERINSURED MOTORISTS COVERAGE

### COVERAGE D8 - UNDERINSURED MOTORISTS (BODILY INJURY) STACKED

### COVERAGE D9 - UNDERINSURED MOTORISTS (BODILY INJURY) NON-STACKED

## INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of either an "uninsured motor vehicle" or an "underinsured motor vehicle" where such coverage is indicated as applicable in the Schedule of this endorsement or in the Declarations, because of "bodily injury":

1. Sustained by an "insured"; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle" or the "underinsured motor vehicle".

We will pay under Underinsured Motorists Coverage only if 1. or 2. below applies:

1. The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements; or

2. A tentative settlement has been made between an "insured" and the insurer of the "underinsured motor vehicle", subject to our consent to settle, and we:

   a. Have been given prompt written notice of such tentative settlement; and

   b. Either advance payment to the "insured" in an amount equal to the tentative settlement within a reasonable period of time after receipt of notification or we give written consent to the tentative settlement.

No judgment for damages arising out of a suit brought against the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle" is binding on us unless we:

1. Received reasonable notice of the pendency of the suit resulting in the judgment; and

2. Had a reasonable opportunity to protect our interests in the suit.

## DEFINITIONS

A. "Insured" as used in this endorsement means:

1. You or any "family member";

2. Any other person "occupying" "your covered auto" if the occupancy is (or is reasonably believed to be) with your permission.

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

B. "Underinsured motor vehicle" means a land motor vehicle or "trailer" of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for "bodily injury" under that bond or policy to an "insured" is not enough to pay the full amount the "insured" is legally entitled to recover as damages.

However, "underinsured motor vehicle" does not mean an "uninsured motor vehicle" and does not include any vehicle or equipment:

1. For which liability coverage is provided under Coverage A. of this policy.

2. Owned by any governmental unit or agency except for a Pennsylvania state or municipal government unit or agency.

3. Operated on rails or crawler treads.

4. Designed mainly for use off public roads while not on public roads.

5.  While located for use as a residence or premises.

C.  "Uninsured motor vehicle" means a land motor vehicle or "trailer "of any type:

1.  To which no bodily injury liability bond or policy applies at the time of the accident.

2.  Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in "bodily injury" without hitting:

a.  You or any "family member";

b.  A vehicle which you or any "family member" are "occupying"; or

c.  "Your covered auto".

If there is no contact with the hit-and-run vehicle, the facts of the accident must be proved.

3.  To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

a.  Denies coverage; or

b.  Is or becomes:

(1)  insolvent; or

(2)  involved in insolvency proceedings.

However, "uninsured motor vehicle" does not mean an "underinsured motor vehicle" and does not include any vehicle or equipment:

1.  Owned by or furnished for the regular use of you or any "family member".

2.  Owned or operated by a self-insurer within the meaning of any applicable motor vehicle law except a self-insurer which is or becomes insolvent.

3.  Owned by any governmental unit or agency except for a Pennsylvania state or municipal government unit or agency.

4.  Operated on rails or crawler treads.

5.  Designed mainly for use off public roads while not on public roads.

6.  While located for use as a residence or premises.

**EXCLUSIONS**

A.  We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for "bodily injury" sustained by any "insured":

1.  If that "insured" or the legal representative settles the bodily injury claim without our written consent. However, this exclusion (A.1.) does not apply if such settlement does not adversely affect our rights.

B.  We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for bodily injury sustained:

1.  By you while "occupying" or when struck by, any motor vehicle you own which is not insured for this coverage under this policy. This includes a "trailer" of any type used with that vehicle.

2.  By a "family member":

a.  Who owns an auto while "occupying", or when struck by, any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

b.  Who does not own an auto, while "occupying", or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

C.  We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for" bodily injury" sustained by any "insured":

1.  While occupying "your covered auto" when it is being used as a public or livery conveyance. This exclusion (C.1.) does not apply to a share-the-expense car pool.

2.  Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

D.  We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for "non-economic loss" sustained by any "insured" to whom the limited tort alternative applies, resulting from "bodily injury" caused by an accident involving an "uninsured motor vehicle" or an "underinsured motor vehicle" unless the "bodily injury" sustained is a "serious injury".



Endorsement Symbol Number
A37043

This exclusion (D.) does not apply if that "insured" is injured while "occupying" a motor vehicle insured under a commercial motor vehicle insurance policy.

E.  This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

   1.  Workers' compensation law; or

   2.  Disability benefits law.

F.  We do not provide Uninsured Motorists Coverage or Underinsured Motorists Coverage for punitive or exemplary damages including legal costs related thereto.

## LIMIT OF LIABILITY

## COVERAGE D6 - UNINSURED MOTORISTS (BODILY INJURY) STACKED

A.  Except as provided in paragraph C:

   If separate limits of liability for "bodily injury" for each person and each accident are shown in the Declarations or Schedule of this endorsement for Coverage D6:

   1.  The limit of liability for each person for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" sustained by any one person in any one auto accident.

   2.  Subject to the above limit for each person, the limit of liability shown for each accident for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

B.  Except as provided in paragraph C:

   If a single limit of liability for "bodily injury" liability is shown in the Declarations or Schedule of this endorsement for Coverage D6, this is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

C.  With respect to damages caused by the owner or operator of an "uninsured motor vehicle", the applicable limit of liability under paragraph A. or B. above is the most we will pay regardless of the number of:

   1.  "Insureds";

   2.  Claims made;

   3.  Vehicles or premiums shown in the Declarations or Schedule of this endorsement for Coverage D6; or

   4.  Vehicles involved in the accident.

   However, our maximum limit of liability for all damages arising out of "bodily injury" sustained by you or any "family member" is the sum of the applicable limits for all vehicles shown in the Declarations or Schedule of this endorsement for Coverage D6. For any "insured" other than you or any "family member", our maximum limit of liability is the limit applicable to the vehicle the "insured" was "occupying" at the time of the accident. This is the most we will pay regardless of the number of:

   1.  "Insureds";

   2.  Claims made;

   3.  Vehicles or premiums shown in the Declarations or Schedule of this endorsement for Coverage D6; or

   4.  Vehicles involved in the accident.

D.  No one will be entitled to receive duplicate payments for the same elements of loss under Coverage D6 and:

   1.  Coverage A or Coverage C of this policy; or

   2.  Any Underinsured Motorists Coverage provided by this policy.

E.  We will not make a duplicate payment under Coverage D6 for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible. This includes all payments made to an "insured's" attorney either directly or as part of the payment made to the "insured".

F.  We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss.

## COVERAGE D7 - UNINSURED MOTORISTS (BODILY INJURY) NON-STACKED

A.  Except as provided in paragraph C:

   If separate limits of liability for "bodily injury" for each person and each accident are shown in the

Endorsement Symbol Number
A37043

Declarations or Schedule of this endorsement for Coverage D7:

1. The limit of liability for each person for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" sustained by any one person in any one auto accident.

2. Subject to the above limit for each person, the limit of liability shown for each accident for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

B. Except as provided in paragraph C:

If a single limit of liability for "bodily injury" liability is shown in the Declarations or Schedule of this endorsement for Coverage D7, this is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

C. With respect to damages caused by the owner or operator of an "uninsured motor vehicle" the applicable limit of liability under paragraph A. or B. above is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations or the Schedule of this endorsement Coverage D7; or

4. Vehicles involved in the accident.

D. No one will be entitled to receive duplicate payments for the same elements of loss under Coverage D7 and:

1. Coverage A or Coverage C of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

E. We will not make a duplicate payment under Coverage D7 for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible. This includes all payments made to an "insured's" attorney either directly or as part of the payment made to the "insured".

F. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss.

## COVERAGE D8 - UNDERINSURED MOTORISTS (BODILY INJURY) STACKED

A. Except as provided in paragraph C:

If a separate limits of liability for "bodily injury" for each person and each accident are shown in the Declarations or Schedule of this endorsement for Coverage D8:

1. The limit of liability for each person for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" sustained by any one person in any one auto accident,

2. Subject to the above limit for each person, the limit of liability shown for each accident for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

B. Except as provided in paragraph C:

If a single limit of liability for "bodily injury" liability is shown in the Declarations or Schedule of this endorsement for Coverage D8, this is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

C. With respect to damages caused by the owner or operator of an "underinsured motor vehicle", the applicable limit of liability under paragraph A. or B. above is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations or the Schedule of this endorsement for Coverage D8; or

4. Vehicles involved in the accident.

However, our maximum limit of liability for all damages arising out of "bodily injury" sustained by you or any "family member" is the sum of the applicable limits for all vehicles shown in the Declarations or Schedule of this endorsement for Coverage D8. For any "insured" other than you or any "family member", our maximum limit of liability is the limit applicable to the



vehicle the "insured" was "occupying" at the time of the accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations or the Schedule of this endorsement for Coverage D8; or

4. Vehicles involved in the accident.

D. No one will be entitled to receive duplicate payments for the same elements of loss under Coverage D8 and Coverage A, Coverage C or Coverage D6 or Coverage D7 of this policy.

E. We will not make a duplicate payment under Coverage D8 for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

F. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss.

## COVERAGE D9 - UNDERINSURED MOTORISTS (BODILY INJURY) NON-STACKED

A. Except as provided in paragraph C:

If separate limits of liability for "bodily injury" for each person and each accident are shown in the Declarations or Schedule of this endorsement for Coverage D9:

1. The limit of liability for each person for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" sustained by any one person in any one auto accident.

2. Subject to the above limit for each person, the limit of liability shown for each accident for "bodily injury" liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

B. Except as provided in paragraph C:

If a single limit of liability for "bodily injury" liability is shown in the Declarations or Schedule of this endorsement for Coverage D9, this is our maximum limit of liability for all damages for

"bodily injury" resulting from any one auto accident.

C. With respect to damages caused by the owner operator of an "underinsured motor vehicle", the applicable limit of liability under paragraph A. or B. above is the most we will pay regardless of the number of:

1. Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations or the Schedule of this endorsement for Coverage D9; or

4. Vehicles involved in the accident.

D. No one will be entitled to receive duplicate payments for the same elements of loss under Coverage D9 and Coverage A, Coverage C or Coverage D6 or Coverage D7 of this policy.

E. We will not make a duplicate payment under Coverage D9 for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

F. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss.

## OTHER INSURANCE

If there is other applicable similar insurance available under more than one policy or provision of coverage:

The following priorities of recovery apply:

First — The Uninsured Motorists Coverage or Underinsured Motorists Coverage applicable to the vehicle the "insured" was "occupying" at the time of the accident.

Second — The policy affording Uninsured Motorists or Underinsured Motorists Coverage to the "insured" as a "named insured" or "family member".

1. Under Coverage D7 or D9, when there is applicable insurance available under the First priority:

a. The limit of liability applicable to the vehicle the "insured" was "occupying" under the policy in the First priority, shall first be exhausted; and

b. The maximum recovery under all policies in the Second priority shall not exceed the amount by which the highest limit for any one vehicle under any one policy in the Second priority exceeds the limit applicable under the policy in the First priority.

2. Under Coverage D7 or D9, when there is no applicable insurance available under the First priority, the maximum recovery under all policies in the Second priority shall not exceed the highest applicable limit for any one vehicle under any one policy.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

If we are the insurer against whom the claim is first made, we will pay subject to the limit of liability shown in the Schedule or in the Declarations for Uninsured Motorists Coverage or Underinsured Motorists Coverage, after we and all other contributing insurers agree:

1. Whether the "insured" is legally entitled to recover damages from the owner or operator of an "uninsured motor vehicle" or "underinsured motor vehicle"; and

2. As to the amount of damages.

## ARBITRATION

A. If we and an "insured" do not agree.

1. Whether the owner or operator of the "uninsured motor vehicle" or "underinsured motor vehicle" is legally liable to that "insured" for "bodily injury" sustained and caused by an accident; or

2. The amount of the damages sustained by the "insured";

either party may make a written demand for arbitration.

Issues or questions seeking to interpret language of this policy or to determine whether or how coverage applies to an "insured" may not be arbitrated. Those issues and questions may not be part of any submission to the panel of arbitrators. This in-

cludes, but is not limited to, any issue or questions on:

1. any person's status as an "insured";

2. the stacking of coverages or the amount of coverage available;

3. the sufficiency of the coverage election made for this policy or any other coverage election made, or claimed to have been made, by any person;

4. the residency or domicile of any person, including any person claiming to be an "insured";

5. the applicability of a statute of limitations;

6. our rights and duties;

7. any "insured's" rights and duties under this policy;

8. the interpretation of defined terms, the insuring agreement, exclusions, the limits of liability, this arbitration clause, or any other of the policy's terms and conditions; or

9. the degree to which either party is bound by a decision made by an arbitration panel which a party claims is outside the scope of the arbitration.

B. In the event that a valid written demand for arbitration is made, each party will select an arbitrator from the county in which the arbitration is to be conducted. The two arbitrators will select a third arbitrator from the same county. If the two arbitrators cannot agree on the third within thirty (30) days, either party may request a court in the county where the arbitration is to be conducted to make the selection.

C. Each party will:

1. Pay the expenses it incurs; and

2. Bear equally the reasonable expenses of the third arbitrator.

D. Unless agreed otherwise, arbitration will be conducted in the county in which the "insured" lived at the time of the demand for arbitration. A decision of the arbitrators will be binding as to:

1. Whether the owner or operator of the "uninsured motor vehicle" or "underinsured motor vehicle" is legally liable to that "insured" for



Endorsement Symbol Number
A37043

"bodily injury" sustained and caused by an accident; or

2. The amount of the damages sustained by the "insured".

A decision shall not be binding with respect to any issue not properly the subject of arbitration.

Either party may stay arbitration pending final resolution of whether an issue is properly subject to arbitration. The execution of any judgment or award may also be stayed until final resolution is reached on whether an issue was properly the subject of arbitration.

## GENERAL PROVISIONS

The **GENERAL PROVISIONS** of the policy are amended as follows:

A. The following is added to the **OUR RIGHT TO RECOVER PAYMENT** provisions:

C. Our rights do not apply under Paragraph A. with respect to Underinsured Motorists Coverage if we:

1. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle"; and

2. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within a reasonable period of time after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within a reasonable period of time after receipt of notification:

1. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

2. We also have a right to recover the advanced payment.

B. The following is added to the **TWO OR MORE AUTO POLICIES** provisions:

1. This provision does not apply to Coverage D6 - Uninsured Motorists (Bodily Injury) Stacked; or Coverage D8 - Underinsured Motorists (Bodily Injury) Stacked.

2. No one will be entitled to receive duplicate payments for the same elements of loss under Coverage D6 - Uninsured Motorists (Bodily Injury) Stacked; or Coverage D8 - Underinsured Motorists (Bodily Injury) Stacked.

### Schedule

(Applicable only if not shown in the Declarations)

| Coverage | Description of Vehicle | Limits of Liability | Premium |
| --- | --- | --- | --- |

Endorsement Symbol Number
A37043





MAR -6 2008

**SUPPLEMENTARY AUTOMOBILE APPLICATION - PENNSYLVANIA**
(To be completed by the Named Insured or Applicant)

**TRAVELERS**

| Name _Julee Catona_ | Policy Number (If Not New Business) _98(33)026-1011_ |
| Address _30 W. Vine ST Hatfield PA 19440_ | |

### PENNSYLVANIA NOTICE
### IMPORTANT NOTICE

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:

(1)   Medical benefits, up to at least $100,000.

(1.1)   Extraordinary medical benefits, from $100,000 to $1,100,000 which may be offered in increments of $100,000.

(2)   Income loss benefits, up to at least $2,500 per month up to a maximum of at least $50,000.

(3)   Accidental death benefits, up to at least $25,000.

(4)   Funeral benefits, $2,500.

(5)   As an alternative to paragraphs (1), (2), (3) and (4), a combination benefit, up to at least $177,500 of benefits in the aggregate or benefits payable up to three years from the date of the accident, whichever occurs first, subject to a limit on accidental death benefit of up to $25,000 and a limit on funeral benefit of $2,500, provided that nothing contained in this subsection shall be construed to limit, reduce, modify or change the provisions of section 1715(d) (relating to availability of adequate limits).

(6)   Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also, at least $5,000 for damage to property of others in any one accident.

Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits However, an insured may elect to purchase lower benefit levels than those enumerated above.

Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected. If you have any questions or you do not understand all of the various options available to you, contact your agent or company. If you do not understand any of the provisions contained in this notice, contact your agent or company before you sign.

| Signature of Named Insured _Julee Cu_ | Date _6/5/07_ |

THIS FORM MUST BE SIGNED AND RETURNED. PLEASE TAKE THE TIME TO REVIEW AND UNDERSTAND THE VARIOUS COVERAGES, LIMITS, AND OPTIONS AVAILABLE. THEN INDICATE YOUR CHOICES ON THE FOLLOWING PAGES.

PL-2432 Rev 7-98

Page 1 of 10

## PENNSYLVANIA TORT OPTION SELECTION

**Tort Option Selection:** You have two options. The first is called the "limited tort" option. By choosing this option, you save the most money by agreeing to limit your right to sue for pain and suffering. Even if you choose this option, you still retain a full right to sue for pain and suffering if you sustain a serious injury or if you are injured by an uninsured motorist, a vehicle registered out of state or a drunk driver who causes an accident. And, you are never, under any circumstances, barred from suing for your unpaid economic losses such as medical bills or loss of income. A "serious injury" is defined in the law as a personal injury resulting in death, serious impairment of bodily function or permanent serious disfigurement.

The second option is called the "full tort" option. By choosing this option, you save less money because you retain your present unlimited ability to sue for pain and suffering in an accident.

The "Pennsylvania Tort Option Selection Notice to Named Insureds" form provided on the next page explains these options and provides a cost comparison between what your premium would be with the "limited tort" option (Paragraph A) or with the "full tort" option (Paragraph C).

To choose your tort option, follow the instructions below.

**The law permits you to select a tort option by signing your name on the "Pennsylvania Tort Option Selection Notice To Named Insureds" form on the next page.**

1. If you want the "limited tort" option, sign and date Signature Line I. Otherwise, the law will automatically assign you to the "full tort" option.

2. If you want the "full tort" option, sign and date Signature Line II. If you make no selection, you will be considered to have chosen the "full tort" option and your policy will automatically reflect the "full tort" option and premium.

## PENNSYLVANIA TORT OPTION SELECTION

| NOTICE TO NAMED INSUREDS |
| --- |

A. "Limited Tort" Option Ā The laws of the Commonwealth of Pennsylvania give you the right to choose a form of insurance that limits your right and the right of members of your household to seek financial compensation for injuries caused by other drivers  Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury" as set forth in the policy, or unless one of several other exceptions noted in the policy applies.  The semi-annual premium for the limits you have selected for this "limited tort" option is $1587.00 _____.

Please note, the minimum limits required by the laws of the Commonwealth of Pennsylvania are Bodily Injury, $15,000 each person, $30,000 each accident; Property Damage, $5,000 each accident; and First Party Medical, $5,000.

Additional coverages under this option are available at additional cost.

B. If you wish to choose the "limited tort" option described in paragraph A, you must sign this notice where indicated below and return it. If you do not sign and return this notice, you will be considered to have chosen "full tort" coverage as described in paragraph C and you will be charged the "full tort" premium.

I wish to choose the "limited tort" option described in paragraph A.

Signature Line I. _____     _01/5/07_
                         Named Insured                              Date

C. "Full Tort" Option Ā The laws of the Commonwealth of Pennsylvania also give you the right to choose a form of insurance under which you maintain an unrestricted right for you and the members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering and other nonmonetary damages as a result of injuries caused by other drivers. The semi-annual premium for the limits you have selected for this "full tort" option is $1872.00 _____.

Please note, the minimum limits required by the laws of the Commonwealth of Pennsylvania are: Bodily Injury, $15,000 each person, $30,000 each accident; Property Damage, $5,000 each accident; and First Party Medical, $5,000.

Additional coverages under this option are available at additional cost.

D. If you wish to choose the "full tort" option described in paragraph C, you may sign this notice where indicated below and return it. However, if you do not sign and return this notice, you will be considered to have chosen the "full tort" coverage as described in paragraph C and you will be charged the "full tort" premium.

Signature Line II. _____     _____
                         Named Insured                              Date

E. You may contact your insurance agent, broker or company to discuss the cost of other coverages.

---

## PENNSYLVANIA FIRST PARTY BENEFITS COVERAGE

---

### ELECTION OF LIMITS FORM

**BASIC FIRST PARTY BENEFIT - COVERAGE QA/QB**

Basic First Party Benefits (FPB) includes coverage for medical treatment and rehabilitative services provided after an accident in which the insured, insured's family or passengers are injured in the insured's car. FPB also provides protection if the insured or a family member is struck by a car while walking. FPB will always be provided on policies as mandated by the Commonwealth of Pennsylvania.

QA indicates that the limited tort option was selected.

QB indicates that the full tort option was selected.

The maximum limit for medical expenses provided for Basic First Party Benefits is $5,000 for any one person injured in any one accident.

**ADDED FIRST PARTY BENEFITS - COVEAGE R**

Also available for an additional premium are "Added First Party Benefits" which are summarized below. Please complete and sign this form if additional coverage is desired. Note: Even if you do not want any additional coverages, this form must be signed and returned.

#### Increased Medical Expenses Benefits
(Increases the basic medical to the limit specified below)

| Option | Amount |
|---|---|
| ☐ A4 | $ 10,000 |
| ☐ A5 | $ 25,000 |
| ☐ A6 | $ 50,000 |
| ☐ A7 | $100,000 |

#### Income Loss Benefits
(Amount payable for lost income up to 80% of gross income)

| Option | Maximum Amount | Monthly Amount |
|---|---|---|
| ☒ B5 | $ 5,000 | $1,000 |
| ☐ B6 | $15,000 | $1,000 |
| ☐ B4 | $15,000 | $1,500 |
| ☐ B7 | $25,000 | $1,500 |
| ☐ B8 | $50,000 | $2,500 |

#### Funeral Expenses Benefits
(Reasonable expenses for funeral, burial, or cremation. Expense must be incurred within 24 months of the accident date)

| Option | Amount |
|---|---|
| ☐ C6 | $1,500 |
| ☒ C7 | $2,500 |

#### Accidental Death Benefits
(Amount payable if death occurs as a result of an accident within 24 months of the accident date)

| Option | Amount |
|---|---|
| ☒ D6 | $ 5,000 |
| ☐ D7 | $10,000 |
| ☐ D8 | $25,000 |

#### Combination First Party Benefits
(Benefits for basic medical, increased medical, income loss, funeral expense and accidental death are combined into one total limit. This is the most we will pay as a result of bodily injury to any one insured as the result of any one accident. Funeral expense is limited to $2,500 and Accidental Death to $10,000 for options H & J and $25,000 for options K & L.)

| Option | Total Limit |
|---|---|
| ☐ H | $ 50,000 |
| ☐ J | $100,000 |
| ☐ K | $177,500 |
| ☐ L | $277,500 |

#### Extraordinary Medical Benefits
(Additional medical payments coverage up to $1,000,000 after the first $100,000 of medical is paid by or for any insured.)

| Option | Amount |
|---|---|
| ☐ Coverage W | $1,000,000 |

---

**NOTE:** We strongly urge you to purchase increased Medical Expenses benefits, option A7, if you purchase coverage W, since Coverage W does not pay for the first $100,000 in medical bills.

I have personally reviewed and completed this form. I understand that this coverage election will apply to all future renewals, continuations, and changes in my policy unless I notify Travelers in writing of a new election.

| Signature of Named Insured | Date 6/5/07 |
|---|---|

PL 2432 Rev. 7-98

---

### PENNSYLVANIA UNINSURED MOTORISTS COVERAGE

---

Note: This form only needs to be completed if you wish to reject uninsured motorists coverage.

Uninsured motorists coverage is insurance protection you may purchase that protects you and your family if you or they are injured by a negligent driver who fails to have any insurance coverage. This coverage is optional.  However, we are required to include it in your policy unless you take steps to reject it.

If you do not want this coverage, the insured named first on the application or the declarations page must sign and date the rejection of uninsured motorists protection below. If you want to keep this coverage, do not sign this waiver and go to the next page.

---

### REJECTION OF UNINSURED MOTORIST PROTECTION

---

By signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household. Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.

_____
Signature of First Named Insured

_____
Date

## PENNSYLVANIA UNINSURED MOTORISTS COVERAGE - STACKED LIMITS

Note: This form only needs to be completed if you wish to reject the stacking option for uninsured motorists coverage.

If you have chosen uninsured motorists coverage, your next option is to determine if you wish to stack the limits of this coverage. With "stacking", the limit of liability is determined by adding the uninsured motorists coverage limits for each motor vehicle which covers the injured person as an insured. If you reject "stacking", the total limit of coverage will be the stated limit for the motor vehicle as to which the injured person is insured. You will save on this part of your premium if you reject "stacking". "Stacking" can only be used if you have more than one motor vehicle. Please contact Travelers or your insurance representative for a premium comparison.

To reject stacked limits of uninsured motorists coverage, the insured named first on the application or the declarations must sign and date the rejection of stacked uninsured coverage limits below. If you want to stack this coverage, do not sign this waiver and go to the next page.

## REJECTION OF STACKED UNINSURED COVERAGE LIMITS

By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily rejected the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

_____
Signature of First Named Insured

_____
Date

---

### PENNSYLVANIA UNDERINSURED MOTORISTS COVERAGE

---

Note: This form only needs to be completed if you wish to reject underinsured motorists coverage.

Underinsured motorist protection is insurance coverage you may purchase that protects only you and your family if you or they are injured by a negligent driver who does not have enough bodily injury liability insurance to cover your claims. This coverage is optional. However, we are required to include it in your policy unless you take steps to reject it.

If you do not want this coverage, the insured named first on the application or the declarations page must sign and date the rejection of underinsured motorist protection below. If you want to keep this coverage, do not sign this waiver and go to the next page.

---

### REJECTION OF UNDERINSURED MOTORIST PROTECTION

---

By signing this waiver, I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

_____

Signature of First Named Insured

_____

Date

PL-2432 Rev. 7-98                                                                                      Page 7 of 10

## PENNSYLVANIA UNDERINSURED MOTORISTS COVERAGE Ä STACKED LIMITS

Note: This form only needs to be completed if you wish to reject the stacking option for underinsured motorists coverage.

If you have chosen underinsured motorists coverage, your next option is to determine if you wish to stack the limits of this coverage. With "stacking", the limit of liability is determined by adding the underinsured coverage limits for each motor vehicle which covers the injured person as an insured. If you reject "stacking", the total limit of coverage will be the stated limit for the motor vehicle as to which the injured person is insured. You will save on this part of your premium if you reject "stacking". "Stacking" can only be used if you have more than one motor vehicle. Please contact Travelers or your insurance representative for a premium comparison.

To reject stacked limits of underinsured motorists coverage, the insured named first on the application or the declarations must sign and date the rejection of stacked underinsured coverage limits below. If you want to stack this coverage, do not sign this waiver and go to the next page.

## REJECTION OF STACKED UNDERINSURED COVERAGE LIMITS

By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premium will be reduced if I reject this coverage.

_____
Signature of First Named Insured

_____
Date   6/5/07

## PENNSYLVANIA SELECTION OF UNINSURED AND/OR UNDERINSURED MOTORISTS COVERAGE LIMITS

Note: This section only needs to be completed if you wish to select uninsured and/or underinsured motorists coverage at limits less than your bodily injury liability limits.

If you elect uninsured and/or underinsured motorists coverage, we are required to offer you these coverages at limits equal to your bodily injury liability limits. If you wish to select uninsured and/or underinsured motorists coverage at limits lower than your bodily injury liability limits, you must complete, sign and date the following.

**Request for Lower Limits of
Uninsured and/or Underinsured Motorists Coverage**

Please make selection below **only** if you wish to select uninsured and/or underinsured motorists coverage at limits lower than your bodily injury liability limits:

**Uninsured Motorists Coverage**

☐ $15,000/30,000   ☐ $35,000
☐ $25,000/50,000   ☐ $50,000
☐ $50,000/100,000   ☐ $100,000
☐ $100,000/300,000   ☐ $300,000
☐ Other $_____ / _____   ☐ Other $_____

**Underinsured Motorists Coverage**

☐ $15,000/30,000   ☐ $35,000
☐ $25,000/50,000   ☐ $50,000
☐ $50,000/100,000   ☐ $100,000
☐ $100,000/300,000   ☐ $300,000
☐ Other $_____ / _____   ☐ Other $_____

I understand that this election will apply to all future renewals, continuations, and changes in my policy unless I notify Travelers in writing of a new election.

_____                    _____
Signature of Named Insured                                              Date

## PENNSYLVANIA SELECTION OF COLLISION DEDUCTIBLE

Note: This section only needs to be completed if you wish to select a Collision Coverage deductible below $500.

If you have collision coverage, a $500 deductible is mandatory unless you complete the following waiver.

By signing this waiver, I am rejecting a $500 deductible for collision coverage. I understand that the lower the deductible I select the higher my premiums for Collision insurance will be. I select the following deductibles:

☐ 100
☐ 200 (not available for all vehicles, see note below)
☐ 250

Note: The $200 deductible option is not available for certain vehicle types such as trailers, recreational vehicles, and auto homes and camper bodies equipped with living quarters.

I understand that this election will apply to all future renewals, continuations, and changes in my policy unless I notify Travelers in writing of a new election.

_____                    _____
Signature of Named Insured                                              Date

PL-2432 Rev. 7-98                                                   Page 9 of 10

| PENNSYLVANIA AUTOMOBILE DISCOUNTS |
|---|

Note: This form only needs to be completed if you are requesting a driver improvement course credit or if you have passive restraint equipment or anti-theft devices in any of your vehicles.

**DRIVER IMPROVEMENT COURSE CREDIT**
If a named insured age 55 or older has successfully completed a driver improvement course approved by PennDOT, a 5 percent premium credit may be applied to your policy. To receive this credit:

- a certificate of successful completion from an approved course must be provided; and
- the course must have been completed within the last three years.

**PASSIVE RESTRAINT DISCOUNT**
If your vehicle is equipped with passive seatbelts or airbags, you are entitled to a discount on the first party benefits coverage portion of your policy. Passive seatbelts are those which automatically fasten without any action by the driver or front seat passenger.

If you answer yes to any of the following questions, check the proper block and indicate which vehicle(s).

☐ Does your vehicle have passive seatbelts, which automatically fasten without any action by the driver or front seat passenger? Which vehicle(s):———————

☐ Does your vehicle have driver side airbags only? Which vehicle(s): ———————

☐ Does your vehicle have both a driver and passenger airbag? Which vehicle(s): ———————

**ANTI-THEFT DISCOUNT**
If you have an anti-theft device in your vehicle, it may be one that qualifies for a discount on the comprehensive coverage portion of your policy.

If you answer yes to any of the following questions, check the proper block, indicate which vehicle(s) and provide evidence of installation.

☐ Does your vehicle have an alarm system that can be heard at least 300 feet away for at least 3 minutes? Which vehicle(s):———————

☐ Does your vehicle have a device that you manually set that makes the fuel, ignition or starting system inoperative? Which vehicle(s):———————

☐ Does your vehicle have a device that automatically makes the fuel, ignition or starting system inoperative when the ignition is turned off? Which vehicle(s):———————

| FRAUD NOTICE |
|---|

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects the person to criminal and civil penalties.

I understand that the coverage selections indicated above shall apply on this policy and all future renewals, continuations and changes in my policy until I notify Travelers in writing of any changes.

Signature of Named Insured                                  Date

Agent                                                       Date

PL 2432 Rev. 7-98                                          Page 10 of 10

EXHIBIT "F"

**ORIGINAL**

\* \* \*

1

2

3     In Re:   ESTATE OF SCOTT PARZYCH

4

5

            \*   \*   \*

6           JUNE 9, 2008

            \*   \*   \*

7

8       Statement Under Oath of JACQUELINE

9 PARZYCH, taken pursuant to notice, held at

10 the Law Offices of Moore & Riemenschneider,

11 LLC, 1132 Old York Road, Abington,

12 Pennsylvania, 19001, commencing at 2:07 p.m.

13 on the above date, before Michelle T.

14 Cascio, Shorthand Reporter-Notary Public,

15 there being present.

16

17

18

19           \*   \*   \*

20

      PRECISION REPORTING, INC.

21    230 South Broad Street - 3rd Floor

     Philadelphia, Pennsylvania  19102

22          (215) 731-9847

       1-800-528-3060

23      1134 Parliament Way

   Thorofare, New Jersey  08086

24        (856) 848-4978

Page 14

1      she barely moved her things out, and Scott had

2      his mattress in there on the floor.  He claimed

3      it.

4              Then, when David was going to

5      school, he needed more room.  So Scott and David

6      changed rooms again.  Basically, I think he's

7      been in the same room for the last maybe seven or

8      eight years.

9          Q.    So he's been in that room a fairly

10     long time?

11         A.    Yes.

12         Q.    And when David comes back to stay,

13     he stays in his room?

14         A.    Yes.

15         Q.    What room does Tyler stay in when

16     they come to see you?

17         A.    We have a room that nobody is using.

18         Q.    A guest room?

19         A.    Yes.

20         Q.    When you say they came at least one

21     time per week, do you know why that would be?

22         A.    Well, we babysat for Tyler a lot.

23     If they would go out with their friends on the

24     weekend or whatever, then they would come back to

Page 15

1      our house and sleep there.   Then they would have

2      Tyler -- you know, take him the next day.

3                     Sometimes Scott -- if we were going

4      to -- if there was a big snowstorm predicted,

5      Scott would want to sleep over, because his work

6      was in close proximity to our house.   Also, he

7      liked to help us shovel out in the morning.   So

8      they did that a few times.

9           Q.     Where did Scott work?

10          A.     He worked -- well, his boss lived in

11     North Whales.   They worked at a pool table

12     installation business, and they would travel to

13     different places, but he would go to the boss's

14     house and travel with him to wherever they were

15     going that day.

16          Q.     Was it Fitzwater Pool Table Service?

17          A.     Yes, yes.

18                 MR. MOORE:   Just so you know, we're

19          waiting for the 2007 1099.   The Estate of

20          Fitzwater, because he was driving the

21          vehicle at the time, they filed an

22          extension, which has been jamming up the

23          filings for the tax returns.   I don't know

24          if that's going to help out or not.

EXHIBIT "G"

## ORIGINAL

\*   \*   \*

In Re:  ESTATE OF SCOTT PARZYCH

\*   \*   \*

JUNE 9, 2008

\*   \*   \*

Statement Under Oath of JACQUELINE
PARZYCH, taken pursuant to notice, held at
the Law Offices of Moore & Riemenschneider,
LLC, 1132 Old York Road, Abington,
Pennsylvania, 19001, commencing at 2:07 p.m.
on the above date, before Michelle T.
Cascio, Shorthand Reporter-Notary Public,
there being present.

\*   \*   \*

PRECISION REPORTING, INC.
230 South Broad Street - 3rd Floor
Philadelphia, Pennsylvania  19102
(215) 731-9847
1-800-528-3060
1134 Parliament Way
Thorofare, New Jersey  08086
(856) 848-4978

1                    MS. SCHEESE:   Sure, sure, anything.

2        BY MS. SCHEESE:

3             Q.     How long did he work with Fitzwater

4        Pool Table Service?

5             A.     I think it was probably about five

6        years maybe, four to five years, but I'm not

7        exactly sure.

8             Q.     Can you estimate, of the times that

9        Scott stayed there, was that typically on the

10       weekends or during the week?

11            A.     It was usually on the weekend, but

12       he would stay during the week on occasion also.

13            Q.     In snowstorms and other situations

14       like that?

15            A.     Yes.  They also were in a pool

16       league.  So if they had -- if they were going to

17       be playing closer to my house, they would stay at

18       my house that night when the pool league was

19       over.

20            Q.     How far was your house from Julie's

21       apartment?

22            A.     About 15 minutes maybe.

23            Q.     Did Scott have a car?

24            A.     Yes.

EXHIBIT "H"



# ORIGINAL

* * *

Page 1

1

2

3   In Re:  ESTATE OF SCOTT PARZYCH

4

5

* * *

6   JUNE 9, 2008

* * *

7

8   Statement Under Oath of JACQUELINE

9   PARZYCH, taken pursuant to notice, held at

10   the Law Offices of Moore & Riemenschneider,

11   LLC, 1132 Old York Road, Abington,

12   Pennsylvania, 19001, commencing at 2:07 p.m.

13   on the above date, before Michelle T.

14   Cascio, Shorthand Reporter-Notary Public,

15   there being present.

16

17

18

19   * * *

20

PRECISION REPORTING, INC.

21   230 South Broad Street - 3rd Floor

Philadelphia, Pennsylvania  19102

22   (215) 731-9847

1-800-528-3060

23   1134 Parliament Way

Thorofare, New Jersey  08086

24   (856) 848-4978

1          Q.      Do you know when that was?

2          A.      August 24, 2007.

3          Q.      Now, you said that he continued to

4     reside at your house sometimes?

5          A.      Right.

6          Q.      Can you tell me how often, say per

7     week, how many nights was he there?

8          A.      Probably once a week, at least.

9          Q.      And would Julie come or would --

10         A.      Yes.   Most of the time, Julie would

11    be there too, and also Julie's son, Tyler.   He

12    also had a bedroom at our house.

13         Q.      How many bedrooms does your house

14    have?

15         A.      Five.

16         Q.      How many bathrooms?

17         A.      One full and one powder room.

18         Q.      Now, of the five bedrooms that you

19    have, did Scott stay in the same bedroom his

20    whole life?

21         A.      Actually, no.   They played musical

22    bedrooms when we first moved in.   Jennifer got

23    the largest of the bedrooms, other than the one

24    that we took.   Then, when she got her apartment,

EXHIBIT "I"

1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NO: 08-cv-3138


TRAVELERS INSURANCE        ) DEPOSITION UPON
COMPANY

                         ) ORAL EXAMINATION

    - vs -              )        OF

THE ESTATE OF SCOTT       ) STEVEN CANUSO
PARZYCH AND JACQUELINE
PARZYCH                    )
- - - - - - - - - - - -


           TRANSCRIPT OF DEPOSITION, taken by
and before Lisa Petitta, RPR, CSR, at the LAW
OFFICES of MOORE & RIEMENSCHNEIDER, 1132 Old York
Road, Abington, Pennsylvania, on Tuesday, December
9, 2008, commencing at 10:00 a.m.


ERSA COURT REPORTERS
30 South 17th Street
United Plaza - Suite 1520
Philadelphia, Pennsylvania 19103
(215) 564-1233


ORIGINAL

1         A.      Well, all of my kids know that

2    they're always welcome to stay, you know, any

3    time.  We have the room.  They have their own

4    rooms.  It wasn't like they were putting anybody

5    out.

6              I don't know if that answers your

7    question, but he knew that he could stay any time

8    for whatever reason.  If he -- you know, if it

9    was work-related or because they wanted to go out

10   or whatever, they were always welcome to have

11   Tyler sleep over or to have them come back after

12   they went out with their friends.  So it was just

13   open.  You know, they were always welcome.

14        Q.      Let me ask you this:  If someone

15   were to ask you around that time period who lived

16   at your house, what would you say?

17        A.      Well, that's difficult to say.

18   Scott did have his apartment.  So I guess I would

19   say that was his main residence, but he did live

20   in my house, you know, at times too, and he had a

21   key, as did Julie, and they stopped in, you know,

22   at all different times.  It wasn't like he had to

23   call and say "Mom, is it okay if we come over" or

24   "Can I stop in for lunch" or whatever.

eb895348-ac97-414e-9cf4-d29f1b659dd3

1        I mean, he would just come in

2   whether we were home or not and let himself in.

3   He would feel free to come in and do whatever he

4   wanted to do, just as if that were his only

5   residence.

6        Q.    Did Scott drive any of your vehicles

7   on a regular basis?

8        A.    Not on a regular basis, but

9   occasionally, if his car was in the shop or

10  whatever, he might take our car.  You know, it

11  was a rare occasion, but it would happen on

12  occasion.

13       Q.    And I agree with your attorney's

14  statement that you shouldn't ask a question that

15  you don't know where it's going, but I will ask

16  this next one anyway.  Why did you list Scott as

17  a driver on your policy?

18       A.    When I first got the policy, I put

19  down my name, my husband's and David's name, and

20  the insurance agent said "Does anyone else live

21  there?"

22            I said "My son Scott, but he has his

23  own policy.  I wasn't going to put him on this

24  policy."

1          He said "Well, you should list him

2     anyway, because you never know when he might

3     drive your car, and he should be covered."

4          So I said "Fine, put him on."

5          MR. MOORE:   When you say "agent",

6     would that be Mr. Canuso?

7          THE WITNESS: Yes, yes.

8          MR. MOORE:  And you said you told

9     Mr. Canuso that Scott lived with you?

10          THE WITNESS:  Yes.  We got this

11     policy before he knew Julie, so there was no

12     question that he lived there at that point,

13     but he did have another policy.  I don't

14     know who it was with, but he did have his

15     own insurance policy.  So I wasn't going to

16     put him on our policy.

17          Originally, we listed our car and

18     David's car and my husband, myself and David

19     as the drivers, but then he suggested that

20     we put Scott on there also.  We didn't put

21     his vehicle on there, just his name.

22     BY MS. SCHEESE:

23          Q.     And you said you got that policy

24     before he met Julie?

1      A.      Oh, yes.

2      Q.      Did you ever call to update that

3  policy or anything like that?

4      A.      No, not for people.  For vehicles,

5  when we changed a vehicle, I would call to change

6  that.

7          MS. SCHEESE:   That's all I have.

8      Thank you.

9          MR. MOORE:   I just have a couple of

10     questions.

11                  *   *   *

12                  EXAMINATION

13                  *   *   *

14  BY MR. MOORE:

15     Q.      Where was the laundry done for Scott

16  and Julie?

17     A.      When they got this apartment that

18  they got together, they did have a washer and

19  dryer, but before that, Scott's clothes were all

20  washed at my house, and Julie would bring her and

21  Tyler's laundry over also.  It would all be done

22  at my house.

23     Q.      After Julie and Scott rented the

24  apartment in Hatfield, did Julie treat your house

EXHIBIT "J"

1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## NO: 08-cv-3138

| | | |
|---|---|---|
| TRAVELERS INSURANCE COMPANY | ) | DEPOSITION UPON |
| | ) | ORAL EXAMINATION |
| - vs - | ) | OF |
| THE ESTATE OF SCOTT PARZYCH AND JACQUELINE PARZYCH | ) | STEVEN CANUSO |
| | ) | |

- - - - - - - - - - - -

TRANSCRIPT OF DEPOSITION, taken by and before Lisa Petitta, RPR, CSR, at the LAW OFFICES of MOORE & RIEMENSCHNEIDER, 1132 Old York Road, Abington, Pennsylvania, on Tuesday, December 9, 2008, commencing at 10:00 a.m.

ERSA COURT REPORTERS
30 South 17th Street
United Plaza - Suite 1520
Philadelphia, Pennsylvania 19103
(215) 564-1233



*ORIGINAL*

### STEVEN CANUSO

20

1    Q.      Was he a listed driver with another policy?

2    A.      He was with -- he was with the another

3    company.  We put him with a different company.  We

4    put him with Progressive.

5    Q.      How long was he with Progressive?

6    A.      I want to say three years, four years.

7    Q.      Do you know who he's insured with on

8    November 15, 2007, the day he tragically died?

9    A.      Yes.  He was on his wife's policy.

10   Q.      With --

11   A.      Jacqueline Parzych, yes, Jacqueline.

12   Q.      That's his mom.

13   A.      Isn't Jackie or --

14   Q.      Julie.

15   A.      Julie, excuse me, Julie Parzych.  Sorry.

16   Q.      And was he a listed driver on that policy

17   also?

18   A.      He was listed driver, yes.

19   Q.      Was he a listed driver on his mother's

20   policy on the day that he past away?

21   A.      He was listed as a driver in the household,

22   yes.

23   Q.      And what --

24   A.      With insurance elsewhere.

## STEVEN CANUSO

21

1   Q.      What does it mean to be a driver in the

2   household with insurance elsewhere?

3   A.      Just means that you are in that household,

4   you live in the household, and you have insurance

5   elsewhere.

6   Q.      That's your understanding?

7   A.      At this point?

8   Q.      Yes.

9   A.      What date?

10  Q.      In November 15, '07.

11  A.      No.

12  Q.      Then why would he be listed in the

13  household as a driver on that day?

14  A.      Probably oversight on administrative.

15  Q.      Is he still listed as driver on her policy?

16  A.      No.

17  Q.      When was he taken off?  When I say her

18  policy, I mean Jacqueline's policy.

19  A.      I don't know the exact date.  Probably in

20  February.

21  Q.      Are they still clients of yours, Jacqueline

22  and Val Parzych?

23  A.      Yes.

24  Q.      Still with Travelers?

EXHIBIT "K"

1

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NO: 08-cv-3138

TRAVELERS INSURANCE        ) DEPOSITION UPON
COMPANY

                           ) ORAL EXAMINATION

    - vs -                  )      OF

THE ESTATE OF SCOTT        ) STEVEN CANUSO
PARZYCH AND JACQUELINE
PARZYCH                     )

- - - - - - - - - - - -

            TRANSCRIPT OF DEPOSITION, taken by
and before Lisa Petitta, RPR, CSR, at the LAW
OFFICES of MOORE & RIEMENSCHNEIDER, 1132 Old York
Road, Abington, Pennsylvania, on Tuesday, December
9, 2008, commencing at 10:00 a.m.

            ERSA COURT REPORTERS
            30 South 17th Street
          United Plaza - Suite 1520
        Philadelphia, Pennsylvania 19103
              (215) 564-1233



## STEVEN CANUSO

26

1  Q.      Was he married at that point?

2  A.      I don't know.  I don't know the exact date

3  of marriage.

4  Q.      Do you know where he was living at this

5  point?

6  A.      Hatfield.

7  Q.      How do you know he's living in Hatfield?

8  A.      Because he mentioned it to me.

9  Q.      Did you ever visit him at that place?

10 A.      No.

11 Q.      Do you know if he lived in North Wales in

12 addition to living in Hatfield during the time

13 period?

14 A.      I knew when he was single he did.

15 Q.      Lived where?

16 A.      With his parents.

17 Q.      Do you know if he ever relinquished his

18 residence at his parents' house once he got

19 married?

20 A.      I don't know that.

21 Q.      Do you know if he stayed at his parents'

22 house on a weekly basis?  Monthly basis?

23 A.      No idea.

24 Q.      Do you know if his wife, Mr. Parzych, and

STEVEN CANUSO

27

1    her son stayed at Scott's parents' house at 521

2    East Montgomery Drive up until the day of the

3    accident?

4    A.       I would have no idea.

5    Q.       Do you know if Mr. Parzych had dual

6    residency?

7    A.       I wouldn't have any idea.

8    Q.       When you are an insurance agent getting

9    business from a new insured, do you check their

10   driver's licenses?

11   A.       We get their driver's license numbers.  Do

12   I check their driver's license, no.

13   Q.       Do you know what address Scott had on his

14   driver's license for when he died?

15   A.       I have no idea.

16   Q.       Do you know what he had when he was listed

17   as a driver under his wife's policy?

18   A.       Do I know what his address was on his

19   license, no.

20   Q.       Yes.

21   A.       No.

22   Q.       When Scott told you that he was married

23   living in Hatfield, did you ever take him off his

24   mother's policy as a listed driver?

**ELECTRONIC REPORTING STENOGRAPHIC AFFILIATES**

**STEVEN CANUSO**

28

1   A.      No.  He's still listed on it.  I haven't

2   touched it.  It's still on there.

3   Q.      Listed driver, I'm taking your definition

4   would be a driver that lives in the household?

5   A.      Lives in the household.

6   Q.      Okay.  Why don't we just -- unless you have

7   any questions, I'm going to wait for the chart.

8               MR. ABBOTT:  Let me look at my

9         notes one second.

10              MR. MOORE:  Take your time.

11  BY MR. ABBOTT:

12  Q.      Two follow-ups.  I don't want to put words

13  in your mouth, Mr. Canuso, but I believe you said

14  it was an oversight, an administrative oversight as

15  to why -- you answered as to why Scott was still

16  listed on his mother's policy at the time of his

17  death?

18              MR. MOORE:  Objection.  You can

19        answer.

20              THE WITNESS:  Yes.

21  BY MR. ABBOTT:

22  Q.      And is that the only reason why he remained

23  on his mother's policy at the time of his death?

24  A.      Absolutely.

**ELECTRONIC REPORTING STENOGRAPHIC AFFILIATES**